IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| M1 HOLDINGS INC.,<br><br>    Plaintiff,<br><br> v.<br><br>MEMBERS 1ST<br>FEDERAL CREDIT UNION,<br><br>    Defendant. | Case No. 22 cv 1162<br><br>Judge:<br><br>Magistrate Judge:<br><br>Jury Trial Demanded |

## COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT

M1 Holdings Inc. ("M1") complains against Defendant Members 1st Federal Credit Union ("Members 1st") as follows:

### NATURE OF THE CASE

1. M1, a Chicago-based company, brings this action seeking a declaratory judgment that none of M1's federally registered trademarks, pending federal trademark registration applications, common-law trademarks, marketing, and other brand identifiers incorporating the mark "M1" infringe Members 1st's design mark bearing Registration No. 3,055,347 for M1ˢᵗ (hereinafter "Members 1st Design Mark"). (*See* registration certificate for Federal Trademark Registration No. 3,055,347, attached hereto as Ex. A.) Since October 2020, Defendant Members 1st has accused M1 of infringing the Members 1st Design Mark through M1's various registered, applied-for, and common-law trademarks and other branding. During these past sixteen months, the parties endeavored to amicably resolve these allegations, including engaging in six months of negotiations over a proposed coexistence agreement. However, Members 1st recently broke off discussions and levied new allegations that, *inter alia*, M1's use of the term "M1" for "banking services," in "any designation using the text 'M1,' regardless of stylization, design, and/or

114738.1

additional components," infringes the Members 1st Design Mark, threatening both M1's branding strategy and overall business.

2. Members 1st has asserted that it "is prepared to take all appropriate legal action necessary to protect Members 1st's interests and will vigorously pursue monetary damages and equitable relief for the infringement, in addition to filing to oppose and/or cancel your client's applications and registrations." This is a broad and improper overreach of the limited rights afforded to Members 1st for their stylized letter mark, and thus M1 has no choice but to seek declaratory relief from this Court.

## THE PARTIES

3. M1 is a Delaware corporation with its principal place of business in Chicago, Illinois. M1 is a technology company that provides a range of financial products and services.

4. Members 1st is a federally chartered credit union having its principal place of business in Mechanicsburg, Pennsylvania. Members 1st provides credit union services.

## VENUE AND JURISDICTION

5. Jurisdiction is proper in this Court because this litigation arises under federal law, namely 17 U.S.C. § 1051 et seq. (the Lanham Act), 28 U.S.C. § 1338(a), and 28 U.S.C. § 2201 (Declaratory Judgment Act), thereby vesting this Court with original federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6. This Court has personal jurisdiction over Members 1st based upon both its specific as well as continuous and systematic contacts with this judicial district. This includes, on information and belief, Members 1st's substantial sales of its products and services and its regular business contacts with the forum, such as, for example, providing mortgage services and an interactive website – both of which utilize what Members 1st purports to be the Members 1st

114738.1

Design Mark. (*See* https://www.members1st.org/personal/borrow/mortgage). Separately, starting in October 2020, and continuing over the past sixteen months, Members 1st has engaged in repeated communications and negotiations regarding its allegations of infringement with M1, a known resident of this forum. This includes the exchange of five letters regarding Members 1st's allegations of infringement (three letters from Members 1st directed to this forum and two letters from M1 sent from this forum), and at least ten discrete email or telephone communications sent by Members 1st concerning said allegations, including over six months of negotiations over a proposed coexistence agreement. Over the past month, Members 1st has amplified its threats of infringement, and its most recent communications have been made by litigation counsel. Members 1st's accusations and threats of litigation against M1 have affected M1's ability to market itself and otherwise do business in this forum.

7. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c).

8. An actual case or controversy has arisen between the parties. Members 1st has threatened litigation against M1, and has asserted that M1's registered, applied-for, and common law trademarks and other branding constitute trademark infringement. These statements threaten irreparable injury to M1.

## GENERAL ALLEGATIONS

### M1's Goods, Services, and Branding

9. M1 is a company whose business focuses on goods and services in the financial technology or "fintech" industry. Since 2016, M1 has offered its "M1 App" via the Apple and Google Play application stores. (*See, e.g.,* https://apps.apple.com/us/app/m1-finance-free-investing/id1071915644.) Even in its earliest iterations, the M1 App has allowed users, to *inter alia*, invest funds in investment accounts and purchase shares of stocks, bonds, and mutual funds.

114738.1

(*See, e.g.,* https://m1.com.) The M1 App also allows users to borrow funds from the users' investment holdings. (*See id.*) M1 has subsequently expanded its offerings to include a premium service, "M1 Plus," which allows members access to additional goods and services such as credit cards, as well as the ability to spend funds through a checking account linked to a debit card. (*See id.*) The services provided by the M1 App are also accessible via M1's website, www.m1.com.

10. The M1 App and m1.com website are accessible to and provide services to users throughout the United States. M1's users number in the hundreds of thousands, and it has more than $5.5 billion in assets under management.

11. Since 2016, M1's branding efforts have included the use of the stylized mark ("M1 Design Mark") for M1's goods and services. M1 has subsequently incorporated use of the stylized mark ("M1 Plus Design Mark") in connection with its branding for M1 Plus. M1 also uses the standard character mark "M1" to refer to its goods and services.

12. M1 has applied for and successfully obtained federal registrations for the M1 Design Mark, and currently has applications pending before the U.S. Patent and Trademark Office for both the M1 Design Mark and M1 Plus Design Mark. (*See* registration certificates for Federal Trademark Registration Nos. 6,461,513 and 6,448,395, true and correct copies of which are attached hereto as Ex. B.)

**The Present Dispute**

13. On October 20, 2020, M1 received correspondence from Members 1st demanding, *inter alia*, that M1 cease and desist all use of its M1 Design Mark. (*See* October 20, 2020 Correspondence, a true and correct copy of which is attached hereto as Ex. C, at 4.)

4

14. M1 responded to Members 1st's correspondence on October 29, 2020, and contested Members 1st's allegation that the M1 Design Mark was confusingly similar to the Members 1st Design Mark. (*See* October 29, 2020 Correspondence, a true and correct copy of which is attached hereto as Ex. D, at 3.) Specifically, as to the Members 1st Design mark , M1 explained that:

> [t]he thickness of the left stem, left stroke, and right stem are essentially identical, whereas the right stroke is noticeably thinner. Additionally, the right stroke of the "M" shape in the M1ST Logo is bisected by a large horizontal gap that is approximately 1/5 the height of the stylized mark. The width of the "M" shape is also greater than its height. Finally, the ordinal indicator "st" is placed to the upper right corner of the "M" shape. These design choices draw attention to the ordinal number "1st" (denoting a position) in the mark.

(*Id.*) M1 contrasted this with the M1 Design Mark , which:

> utilizes a sans-serif font of essentially uniform thickness separated into three separate sections – a left stem, a left stroke, and a combined right stem/right stroke. Each section is separated from its adjacent section by a very narrow diagonal gap. Moreover, the "M" shape is of essentially uniform width and height. The mark does not incorporate any ordinal indicator and is designed such that attention is first drawn to the letter "M," followed by the cardinal number "1" (denoting a quantity). Moreover . . . M1's Stylized "M" mark has both a different pronunciation and meaning from Members 1st's M1ST Logo.

(*Id.*)

5

114738.1

15. M1's correspondence further asserted that Members 1st's allegations constituted an overreach of the rights afforded its trademark registration, and cited to multiple other entities utilizing stylized depictions of "M" or "M1." (Ex. D at 3-4.)

16. After receiving no further response from Members 1st, on November 18, 2020, M1 filed three applications for federal registration of the M1 Design Mark in international classes 009, 036, and 042, respectively (hereinafter the "009 Mark," "036 Mark," and "042 Mark"). On June 10, 2021, Members 1st filed a request for an extension of time to oppose the application for the 036 Mark, but did not seek separate extensions for the applications for the 009 Mark or 042 Mark. The applications for the 009 Mark and 042 Mark subsequently registered as Registration Nos. 6,461,513 and 6,448,395, respectively. (*See* Ex. B.)

17. Between June 2021 and December 2021, M1 and Members 1st engaged in discussions aimed at resolving Members 1st's allegations concerning M1's marks. This included at least ten telephone or email communications from Members 1st's counsel concerning, *inter alia*, a proposed coexistence agreement, which the parties actively negotiated over a period of six months.

18. However, while it was initially M1's understanding that Members 1st sought solely to ensure that M1's marks remain distinctive from the Members 1st Design Mark, and that Members 1st would have the exclusive right to use the ordinal "st" indicator, it later became clear that Members 1st was seeking broad field-of-use restrictions to all uses of the term "M1" in the banking industry. Such a restriction would directly affect M1's branding for, *inter alia*, its checking account services and debit card services.

19. When M1 raised its concerns regarding the field-of-use restriction, Members 1st claimed to be unaware that M1 provided such goods and services, despite the fact that Members

114738.1

1st previously described those services in a proposed coexistence agreement that Members 1st itself drafted. Its claimed lack of knowledge was thus false. While the parties agreed to continue to pursue coexistence discussions, on November 16, 2021, Members 1st filed its Notice of Opposition to the application for the 036 Mark. In correspondence shortly thereafter, M1 expressed its intention to respond to the Notice, but nevertheless remained committed to resolving the matter amicably, and requested an updated proposal from Members 1st as to how to resolve the matter. By agreement of the parties, M1's response to the Notice of Opposition is not due until March 26, 2022.

20. On February 11, 2022, M1 received new correspondence from Members 1st. (*See* February 11, 2022 Correspondence, a true and correct copy of which is attached hereto as Ex. E.) In a shift of tone, the February 11th letter, which was sent by Members 1st's litigation counsel, asserted that unnamed marks belonging to M1 (referred to in the February 11th correspondence as "Infringing Marks") were infringing the Members 1st Design Mark. (*Id.* at 1-2.) Members 1st demanded that M1 immediately cease and desist all use of the so-called "Infringing Marks." (*Id.* at 4.) The February 11th letter concluded by alleging that Members 1st reserved "the right to pursue litigation in federal court and opposition and cancellation proceedings before the Trademark Trial and Appeal Board without further notice to you." (*Id.*)

21. Being unable to discern what Members 1st considered to be "Infringing Marks," M1 responded to Members 1st on February 17, 2022 seeking clarification. (*See* February 17, 2022 Correspondence, a true and correct copy of which is attached hereto as Ex. F.) On March 3, 2022, Members 1st responded and demanded that M1 expressly abandon Registration Nos. 6,448,395 and 6,461,513 (*i.e.,* the 009 Mark and 042 Mark that Members 1st did not previously oppose), as well as withdraw applications bearing Serial Nos. 90/326,818, 90/813,247, and 90/813,234. (*See*

March 3, 2022 Correspondence, a true and correct copy of which is attached hereto as Ex. G, at 2-3.) Members 1st further demanded that M1's applications bearing Serial Nos. 90/705,978, 90/705,960, and 90/705,968 be significantly amended. (*Id*.)

22. Lastly, Members 1st demanded that M1 cease any use of the mark "M1," whether stylized or in standard character form, in connection with so-called "credit union and banking services," as well as any use of the mark "M1," whether stylized or in standard character form, for so-called "related and/or complementary services to banking services" that did not otherwise utilize a "differentiating component." (Ex. G at 3.)

23. Given that M1's business is in the fintech industry, Members 1st's March 3rd correspondence is effectively a demand that M1 cease all use of the mark "M1" on its own, regardless of whether it is a word mark or design mark. Members 1st has threatened that, if M1 does not abide by these demands, Members 1st will "take all appropriate legal action necessary to protect Members 1st's interests and will vigorously pursue monetary damages and equitable relief for the infringement, in addition to filing to oppose and/or cancel your client's applications and registrations." (Ex. G at 3.)

**COUNT I**
**Declaratory Judgment of Non-infringement of Trademarks, 15 U.S.C. § 1051 et seq.**

24. M1 incorporates by reference the allegations contained in paragraphs 1 through 23, inclusive.

25. Members First has claimed that M1's use of its marks bearing federal Registration Nos. 6,448,395 and 6,461,513, as well as M1's use of its marks that are the subject of applications bearing Serial Nos. 90/326,818, 90/813,247, 90/813,234, 90/705,978, 90/705,960, and 90/705,968 constitute trademark infringement. Separately, Members 1st claims that any use by M1 of the mark "M1" – in either standard character or stylized form – for "credit union and banking

8

services," or "related and/or complementary services to banking services" (when said mark does not otherwise utilize a "differentiating component") constitutes trademark infringement. Members 1st has threatened to bring a lawsuit against M1 on these bases. This is an impermissible expansion of the limited rights Members 1st is afforded for its Members 1st Design Mark.

26. An actual, present and justiciable controversy has arisen between M1 and Members 1st concerning M1's right to use these marks as source identifiers.

27. M1 seeks a declaratory judgment from this Court that its use of the above marks does not constitute trademark infringement.

28. A declaration of the Parties' respective rights would resolve some or all of their controversy.

29. M1 denies all of Members 1st's allegations.

WHEREFORE, M1 Holdings Inc. respectfully requests that the Court:

A. Enter judgment according to the declaratory relief sought;

B. Award all costs of this suit, and any applicable pre- and post-judgment interests and costs; and

C. Enter such further relief as the Court deems proper and just.

Dated: March 4, 2022                M1 HOLDINGS INC.

                                                  Respectfully submitted,

                                                  By: /s/ Douglas A. Albritton
                                                       One of its attorneys

114738.1

Douglas A. Albritton (ARDC 6228734)
Stacy A. Baim (ARDC 6257018)
Peter G. Hawkins (ARDC 6289701)
Actuate Law, LLC
641 W. Lake Street, Fifth Floor
Chicago, IL 60661
(312) 579-3108
doug.albritton@actuatelaw.com
stacy.baim@actuatelaw.com
peter.hawkins@actuatelaw.com

114738.1