## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| M1 HOLDINGS INC., | |
| Plaintiff, | |
| v. | Case No. 22-cv-01162 |
| MEMBERS 1ST FEDERAL CREDIT UNION, | Judge Robert W. Gettleman |
| Defendant. | Mag. Judge Jeffrey Cole |
| MEMBERS 1ST FEDERAL CREDIT UNION, | |
| Counter-Claimant, | |
| v. | **JURY TRIAL DEMANDED** |
| M1 HOLDINGS INC. and LINCOLN SAVINGS BANK, | |
| Counter-Defendants. | |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant Members 1st Federal Credit Union ("Members 1st"), by and through its undersigned counsel, answers the Complaint for Declaratory Judgment of Non-Infringement filed by Plaintiff M1 Holdings Inc. ("M1 Holdings"), as follows:

## ANSWER TO COMPLAINT FOR
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT

## NATURE OF THE CASE

1.      Members 1st admits that it is the owner of U.S. Trademark Registration No. 3055347 for the mark **M**$^{st}$, for which Plaintiff purports to have attached a copy of the registration certificate to the Complaint as Exhibit A, and that Members 1st has had communications with Plaintiff's counsel about Plaintiff's unauthorized use of various marks comprised of and/or incorporating the term "M1", in both standard character form and various

stylizations.  The remaining allegations of Paragraph 1 are conclusions of law to which no response is required.  To the extent a response is required, Members 1st denies the remaining allegations of Paragraph 1, including, but not limited to Plaintiff's characterization of the duration and substance of the parties' prior communications.  By way of further answer, Plaintiff also bases many of the allegations of Paragraph 1 on writings that speak for themselves and Members 1st denies all characterizations thereof.

2.     The allegations of Paragraph 2 are conclusions of law to which no response is required. To the extent a response is required, Members 1st specifically denies the allegations of Paragraph 2.  By way of further answer, Plaintiff bases the allegations of Paragraph 2 on writings that speak for themselves and Members 1st denies all characterizations thereof.

### THE PARTIES

3.     Admitted upon information and belief.

4.     Members 1st admits that it is a federally chartered credit union and that it provides credit union services.  Members 1st denies the remainder of the allegations of Paragraph 4.  By way of further answer, Members 1st's principal place of business is located in Enola, Pennsylvania.

### VENUE AND JURISDICTION

5.     The allegations of Paragraph 5 are conclusions of law to which no response is required. To the extent a response is required, Members 1st specifically denies the allegations of Paragraph 5.

6.     Members 1st admits only that it operates a website at https://www.members1st.org and that its legal counsel has had communications with Plaintiff's legal counsel regarding Plaintiff's unauthorized use of various marks comprised of and/or incorporating the text "M1", in both standard character form and various stylizations.  The remaining allegations of Paragraph 6

2

131707127

are conclusions of law to which no response is required. To the extent a response is required, Members 1st denies the remaining allegations of Paragraph 6, including, but not limited to Plaintiff's characterization of the duration and substance of the parties' prior communications. By way of further answer, Plaintiff bases many of the allegations of Paragraph 6 on writings that speak for themselves and Members 1st denies all characterizations thereof.

7.     The allegations of Paragraph 7 are conclusions of law to which no response is required. To the extent a response is required, Members 1st denies the allegations of Paragraph 7.

8.     The allegations of Paragraph 8 are conclusions of law to which no response is required. To the extent a response is required, Members 1st denies the allegations of Paragraph 8. By way of further answer, Plaintiff bases the allegations of Paragraph 8 on writings that speak for themselves and Members 1st specifically denies all characterizations thereof.

## GENERAL ALLEGATIONS

### Plaintiff's Goods, Services, and Branding

9.     Members 1st is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 9. Thus, Members 1st denies the allegations.

10.     Members 1st is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 10. Thus, Members 1st denies the allegations.

11.     Members 1st admits that Plaintiff is currently using various marks comprised of and/or incorporating the text "M1", in both standard character form and various stylizations, and that the manner of such uses and the nature of the goods and services offered by Plaintiff thereunder have, since Members 1st raised an issue with Plaintiff's uses, significantly expanded. M1 Holdings conduct constitutes unlawful, willful trademark infringement upon Members 1st's trademark rights. Members 1st is without sufficient knowledge or information to form a belief as

3

to the truth of the remaining allegations contained in Paragraph 11. Thus, Members 1st denies the allegations.

12.     Members 1st admits that Plaintiff is listed as the registrant of U.S. Trademark Registration Nos. 6461513 and 6448395 for the  designation for "a mobile application for brokerage and trading of investments . . ." in international class 009 and for "Providing a website feature non-downloadable software for brokerage and trading of investments. . ." in international class 042, respectively; that Plaintiff purports to have attached copies of the registration certificates for the same to the Complaint as Exhibit B; and that Plaintiff is listed as the applicant for pending U.S. trademark applications for the  and  designations. Members 1st denies the remaining allegations of Paragraph 12. By way of further answer, Plaintiff bases the allegations of Paragraph 12 on writings that speak for themselves and Members 1st denies all characterizations thereof.

**The Present Dispute**

13.     Members 1st admits that its legal counsel sent a letter to Plaintiff on October 20, 2020, and that Plaintiff purports to attach a copy of the October 20, 2020 letter to the Complaint as Exhibit C. Members 1st denies the remaining allegations of Paragraph 13. By way of further answer, Plaintiff bases the allegations in Paragraph 13 on a writing that speaks for itself and Members 1st denies all characterizations thereof.

14.     Members 1st admits that Plaintiff's legal counsel sent Members 1st's legal counsel a letter on October 29, 2020, and that Plaintiff purports to attach a copy of the October 29, 2020 letter to the Complaint as Exhibit D. The remaining allegations of Paragraph 14 are conclusions of law to which no response is required. To the extent a response is required, Members 1st denies

4

131707127

the allegations of Paragraph 14. By way of further answer, Plaintiff bases the allegations of Paragraph 14 on a writing that speaks for itself and Members 1st specifically denies all characterizations thereof.

15. Plaintiff bases the allegations of Paragraph 15 on a writing that speaks for itself and Members 1st specifically denies all characterizations thereof.

16. Members 1st admits that, on November 18, 2020, Plaintiff filed three trademark applications to register the  designation in international classes 009, 036, and 042; that Members 1st did not oppose Plaintiff's applications to register the  designation for "a mobile application for brokerage and trading of investments . . ." in international class 009 and for "Providing a website feature non-downloadable software for brokerage and trading of investments. . ." in international class 042, respectively; and that the United States Patent and Trademark Office issued U.S. Trademark Registrations Nos. 6461513 and 6448395 for the  designation for "Downloadable software . . ." in international class 009 and for "Providing a website feature non-downloadable software . . ." in international class 042, respectively. Members 1st denies the remaining allegations of Paragraph 16. By way of further answer, Members 1st filed a trademark opposition proceeding in the U.S. Trademark Trial and Appeal Board opposing Plaintiff's registration of the  designation for "Financial and investment services . . ." in international class 036. That trademark opposition proceeding is pending before the U.S. Trademark Trial and Appeal Board.

17. Members 1st admits that the parties' legal counsel engaged in discussions aimed at resolving Members 1st's concerns about Plaintiff's marks and that, at one point, the parties' legal

5

131707127

counsel discussed the possibility of a trademark coexistence agreement. Members 1st denies the remaining allegations of Paragraph 17. By way of further answer, Members 1st specifically denies Plaintiff's characterization of the duration and substance of the prior discussions between the parties' legal counsel. Members 1st further states that the discussions regarding a possible trademark coexistence agreement occurred before Members 1st understood that Plaintiff intended to expand, and did significantly expand, the nature and manner of its uses and the goods and services offered by Plaintiff (*e.g.*, including into the area of banking services—Members 1st's primary area of business) in connection with such uses.

18.     Members 1st is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 18. Thus, Members 1st denies the allegations. By way of further answer, the allegations of Paragraph 18 are conclusions of law to which no response is required. To the extent a response is required, Members 1st specifically denies the allegations of Paragraph 18.

19.     Members 1st admits that it filed a trademark opposition proceeding in the U.S. Trademark Trial and Appeal Board opposing Plaintiff's registration of the mark  in international class 036 and that, by agreement of the parties on the basis of their continuing settlement discussions, Plaintiff's answer to the Notice of Opposition is due on March 26, 2022. Members 1st denies the remaining allegations of Paragraph 19.

20.     Members 1st admits that its legal counsel sent a letter to Plaintiff's legal counsel on February 11, 2022, and that Plaintiff purports to attach a copy of the February 11, 2022 letter to the Complaint as Exhibit E. Members 1st denies the remaining allegations of Paragraph 20. By way of further answer, Plaintiff bases the allegations in Paragraph 20 on a writing that speaks for itself and Members 1st denies all characterizations thereof.

6

131707127

21.     Members 1st admits that Plaintiff's legal counsel sent a letter to Members 1st's legal counsel on February 17, 2022, that Members 1st's legal counsel sent a responsive letter on March 3, 2022, and that Plaintiff purports to attach copies of the February 17, 2022 and March 3, 2022 letters to the Complaint as Exhibit F and Exhibit G, respectively.  Members 1st denies the remaining allegations of Paragraph 21.  By way of further answer, Plaintiff bases the allegations in Paragraph 21 on writings that speaks for themselves and Members 1st denies all characterizations thereof.

22.     Plaintiff bases the allegations of Paragraph 22 on a writing that speaks for itself and Members 1st specifically denies all characterizations thereof.

23.     The allegations of Paragraph 23 are conclusions of law to which no response is required.  To the extent a response is required, Members 1st denies the allegations of Paragraph 23.  By way of further answer, Plaintiff bases the allegations of Paragraph 23 on a writing that speaks for itself and Members 1st specifically denies all characterizations thereof.

## COUNT I
## Declaratory Judgment of Non-Infringement of Trademarks, 15 U.S.C. § 1051, *et seq.*

24.     Members 1st incorporates herein by reference its answers to Paragraphs 1 through 23 of the Complaint.

25.     The allegations of Paragraph 25 are conclusions of law to which no response is required.  To the extent a response is required, Members 1st denies the allegations of Paragraph 25.  By way of further answer, Plaintiff bases the allegations of Paragraph 25 on writings that speak for themselves, and Members 1st specifically denies all characterizations thereof.

26.     The allegations of Paragraph 26 are conclusions of law to which no response is required.  To the extent a response is required, Members 1st denies the allegations of Paragraph 26.

131707127

27.     Members 1st admits that Plaintiff purports to assert a claim for declaration judgment of non-infringement against Members 1st.  Members 1st denies the remaining allegations of Paragraph 27.

28.     The allegations of Paragraph 28 are conclusions of law to which no response is required.  To the extent a response is required, Members 1st denies the allegations of Paragraph 28.

29.     Paragraph 29 does not state any allegations against Members 1st and, therefore, no response is required.  To the extent a response is required, Members 1st denies the allegations of Paragraph 29.

## GENERAL DENIAL

To the extent that any allegations of the Complaint are not specifically admitted, Members 1st hereby denies them.

## PRAYER FOR RELIEF

Members 1st denies each and every allegation, and denies that Plaintiff is entitled to any of the requested relief sought in Plaintiff's Prayer for Relief, including Paragraphs A through C.

## AFFIRMATIVE DEFENSES

Without assuming any burden other than that imposed by operation of law, Members 1st asserts the following affirmative defense to Plaintiff's declaratory judgment claim of trademark non-infringement against Members 1st.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed because Plaintiff has failed to state a claim upon which relief can be granted.

8

131707127

## RESERVATION OF RIGHTS

Members 1st reserves all affirmative defenses permitted under the Federal Rules of Civil Procedure, the trademark laws of the United States, and/or at law or in equity that may now exist or in the future be available based on discovery and further investigation in this case.

**WHEREFORE**, Members 1st prays that the Court dismiss Plaintiff's Complaint, enter judgment in favor of Members 1st, and award Members 1st its attorneys' fees and costs, and such other and further relief as this Court deems just and proper.

## COUNTERCLAIMS

Counter-Claimant Members 1st Federal Credit Union ("Members 1st") hereby asserts the following Counterclaims against Counter-Defendants M1 Holdings, Inc. ("M1 Holdings") and Lincoln Savings Bank ("Lincoln Savings") (collectively, the "Counter-Defendants").

## NATURE OF THE ACTION

1.      This is an action for trademark infringement, false designation of origin, unfair competition, and deceptive acts and practices in violation of the laws of the United States and the Commonwealth of Pennsylvania and the State of Illinois.  Members 1st seeks entry of a preliminary and permanent injunction and an award of profits, damages, and other related relief.

## THE PARTIES

2.      Members 1st is a federally-chartered credit union having its principal place of business at 5000 Marketplace Way, Enola, Pennsylvania 17025.

3.      Upon information and belief, M1 Holdings is a Delaware corporation having its principal place of business at 200 N. LaSalle Street, Suite 800, Chicago, Illinois 60601.

4.      Upon information and belief, Lincoln Savings is a federally insured bank having its principal place of business at 360 Westfield Avenue, Suite 6, Waterloo, Iowa 50701.  According to its website, Lincoln Savings provides banking services to both individuals and businesses.

131707127

## JURISDICTION AND VENUE

5.      Counter-Claimant's claims are predicated upon the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.*, and related claims under the statutory and common laws of the Commonwealth of Pennsylvania and the State of Illinois.  This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a) and (b), and supplemental jurisdiction over the claims arising under the common laws of the Commonwealth of Pennsylvania and the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

6.      This Court has personal jurisdiction over Counter-Defendant M1 Holdings by virtue of, among other things, it having consented to the jurisdiction of this Court by filing its Complaint. This Court has personal jurisdiction over Counter-Defendants because, upon information and belief, (1) Counter-Defendants have committed, and continue to commit, acts of infringement in the Northern District of Illinois (the "District") and (2) Counter-Defendant Lincoln Savings has purposefully directed its infringing conduct to the State of Illinois, including through its business dealings with M1 Holdings within the State of Illinois.

7.      Venue is proper under 28 U.S.C. §§ 1391 and 1400 because Counter-Defendants are subject to personal jurisdiction in the District and have committed acts of infringement in the District.

131707127

## <u>GENERAL ALLEGATIONS</u>

## <u>MEMBERS 1ST's TRADEMARK</u>

8.     Counter-Claimant Members 1st is a member-owned, full-service financial institution located in South Central Pennsylvania.  Originally founded in 1950, Members 1st has operated under the name "Members 1st Federal Credit Union" since 1994.

9.     Originally, Members 1st was a single employer group credit union, but it expanded its membership to multiple employers and organizations in the early 1980s.

10.     Thereafter, membership in Members 1st became open to anyone in the United States who falls within its field of membership, today consisting of more than 11,000 employers and organizations. Family members of those individuals are also eligible for membership in Members 1st.

11.     Members 1st has 53 full-service branches and serves over 500,000 members, predominantly in Pennsylvania, although Members 1st has members living or working in all (or nearly all) 50 states, as well as in foreign countries.

12.     Based on total assets of over $6 billion as of December 31, 2021, Members 1st is ranked as the 47th largest credit union nationally and as the 3rd largest credit union in Pennsylvania.

13.     In or around March 2003, as part of a major corporate image marketing overhaul, Members 1st adopted and began using its new trademark, specifically, the M1st mark, which it uses in the following stylized format: $\mathbf{M}^{st}$ ("M1st Mark").

14.     The $\mathbf{M}^{st}$ logo was intended as an extension of its name "Members 1st" in that the M1st Mark consists primarily of a stylized letter "M," wherein the right-hand portion of the traditional "M" letter resembles a numeral "1."

131707127

15.     The M1st Mark was intended to distinguish Members 1st's services from those offered by its competitors, and to express Members 1st's simple but important philosophy of putting the needs of its members first.

16.     Members 1st is the owner of U.S. Trademark Registration No. 3055347, filed on February 18, 2005, and issued on January 31, 2006, on the Principal Register, for the trademark $M^{st}$ for credit union services. Members 1st is also the owner of U.S. Trademark Registration No. 6349066, filed on September 11, 2019, and issued on May 11, 2021, on the Principal Register, for the trademark $M^{st}$ for charitable services. The foregoing registrations are both valid and subsisting, in full force and effect. Further, U.S. Trademark Registration No. 3055347 has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. Attached as **Composite Exhibit 1** are true and correct copies of the registration certificates and maintenance records for Counter-Claimant's United States Trademark Registration Nos. 3055347 and 6349066.

17.     Since 2003, Members 1st has continuously promoted its brand and services using the M1st Mark on television, radio, billboards, email, print advertising, public relations, community sponsorships, giveaways, and the internet.

18.     Thousands of promotional pieces, print ads, billboards and the like prominently featuring Members 1st's M1st Mark have been displayed and/or distributed to potential and actual customers throughout Pennsylvania, surrounding states, and via direct mail to members living in more distant states or countries.

19.     The M1st Mark is prominently featured in all aspects of Members 1st's public dealings.

20.     The M1st Mark and the products and services offered thereunder have received significant unsolicited coverage in various forms of media and outlets.

131707127

21.     Members 1st's M1st Mark is distinctive to both the consuming public and Members 1st's trade.

22.     Members 1st has expended substantial time, money, and other resources in developing, marketing, advertising, and otherwise promoting its M1st Mark and products and services sold under the M1st Mark.

23.     As a result of Members 1st's extensive expenditures and efforts, the M1st Mark is widely and favorably known not only in Pennsylvania and surrounding areas, but across the United States and internationally to the trade and purchasing public to exclusively identify the sole source of the products and services offered by Members 1st and signify the high quality of the products and services designated by the M1st Mark, having acquired incalculable distinction, reputation, and goodwill value belonging exclusively to Members 1st.

24.     As a result of its widespread, continuous, and exclusive use of the M1st Mark to identify its products and services, and Members 1st as their source, Members 1st owns and holds valid and subsisting federal statutory and common law rights to the M1st Mark.

25.     Members 1st has successfully policed, protected and enforced its M1st Mark against past infringements, including in, *inter alia*, *Members 1st Federal Credit Union v. Metro Bank et al.* (MDPA Case No. 1:09-cv-01171), *Members 1st Federal Credit Union v. Merrick Bank Corporation* (MDPA Case No. 1:11-cv-00630), and *Members 1st Federal Credit Union v. 206 Design, LLC et al.* (MDPA Case No. 1:22-cv-00225).

26.     Upon information and belief, none of Members 1st's competitors (apart from Counter-Defendants as described below) use Members 1st's M1st Mark in advertising competing financial products and services.

131707127

27.     For these reasons, Members 1st is diligently protective of its rights in the M1st Mark.

## COUNTER-DEFENDANTS' UNLAWFUL ACTIVITIES

28.     Upon information and belief, Counter-Defendant M1 Holdings incorporated in or around 2015 (which dates over 12 years after Members 1st first began using its M1st Mark).

29.     On or around February 2016, M1 Holdings began providing a website at the domain name www.m1finance.com that advertised investment portfolio services offered primarily under the name "M1 FINANCE."

30.     About a year later, M1 Holdings updated its website to advertise its related mobile application also offered primarily under the name "M1 Finance."

31.     On August 31, 2020, M1 Holdings filed U.S. Trademark Applications for the "M1: THE FINANCE SUPER APP" designation, namely, U.S. Trademark Application No.'s 90/149274, 90/149314, and 90/149301, were filed in connection with for "a mobile application for brokerage and trading of investments . . ." (in international class 009); "Providing a website feature non-downloadable software for brokerage and trading of investments. . ." (in international class 042); and "financial and investment services . . ." (in international class 36), respectively.

32.     In or around October 20, 2020, Members 1st learned of M1 Holdings' trademark application filings that incorporated the text "M1" for use in connection with the proposed financial products and services, and immediately sent it a cease and desist letter.

33.     On October 29, 2020, M1 Holdings responded, arguing that "M1: THE FINANCE SUPER APP" is distinguishable from Members 1st's M1st Mark because of the additional words "THE FINANCE SUPER APP."  M1 Holdings also argued that Members 1st's uses of the M1st Mark were not focused on investment services like those offered by M1 Holdings.

131707127

34.     Based upon M1 Holdings response letter, Members 1st understood that M1 Holdings would primarily be offering its investment services under the M1: THE FINANCE SUPER APP mark (which was consistent with the domain name it used that included the "M1finance" text in it), in connection with its technology services, *i.e.*, providing a website and mobile application for investment services; and that M1 Holdings would not be offering banking services like those Members 1st provides, including, without limitation, checking, savings, debit and credit card services, to its customers.

### COUNTER-DEFENDANTS' WILLFULNESS AND CHANGE TO THE STATUS QUO

35.     Notwithstanding the foregoing, on or about November 18, 2020, M1 Holdings began an apparently planned expansion of the nature and manner of its trademarks that incorporated the text "M1" and the goods and services it offered thereunder, filing three new U.S. trademark applications seeking to register the  designation for use in connection with all of the following products and services:

> Providing a website featuring non-downloadable software for brokerage and trading of investments, securities, stocks, bonds, capital investments, commodities, and equities; Providing a website featuring non-downloadable software for providing information in the field of finance, securities trading, investments, and securities brokerages; Providing temporary use of a non-downloadable web application for brokerage and trading of investments, securities, stocks, bonds, capital investments, commodities, and equities; Providing temporary use of a non-downloadable web application for providing information in the field of finance, securities trading, investments, and securities brokerages (in international class 42).

> Downloadable software in the nature of a mobile application for brokerage and trading of investments, securities, stocks, bonds, capital investments, commodities, and equities; Downloadable software in the nature of a mobile application for providing information in the field of finance, securities trading, investments, and securities brokerages (in international class 009).

> Financial and investment services, namely, management and brokerage in the fields of stocks, bonds, options, commodities, futures and other securities, and the

investment of funds of others; Financial information provided by electronic means in the field of stocks, bonds, options, commodities, futures and other securities, and the investment of funds of others; Financial investment brokerage services; Electronic financial trading services (in international class 036).

36.     Then, in May and July 2021, M1 Holdings proceeded to file the below U.S. trademark applications.  These applications were published for objection by third parties on March 1, 2022.

| Mark | Appl. # | Goods/Services |
|---|---|---|
|  | 90705960 | Downloadable software in the nature of a mobile application for brokerage and trading of investments, securities, stocks, bonds, capital investments, commodities, and equities; Downloadable software in the nature of a mobile application for providing information in the field of finance, securities trading, investments, and securities brokerages; Downloadable software in the nature of a mobile application for accessing, viewing, and managing checking accounts (in international class 009). |
|  | 90705968 | Checking account services; Financial and investment services, namely, management and brokerage in the fields of stocks, bonds, options, commodities, futures and other securities, and the investment of funds of others; Financial information provided by electronic means in the field of stocks, bonds, options, commodities, futures and other securities, and the investment of funds of others; Financial investment brokerage services; Electronic financial trading services (in international class 036). |
|  | 90705978 | Providing a website featuring non-downloadable software for brokerage and trading of investments, securities, stocks, bonds, capital investments, commodities, and equities; Providing a website featuring non-downloadable software for providing information in the field of finance, securities trading, investments, and securities brokerages; Providing a website featuring non-downloadable software for accessing, viewing, and managing checking accounts; Providing temporary use of a non-downloadable web application for brokerage and trading of investments, securities, stocks, bonds, capital investments, commodities, and equities; Providing temporary use of a non-downloadable web application for providing information in the field of finance, securities trading, investments, and securities brokerages; Providing temporary use of a non-downloadable |

16

| Mark | Appl. # | Goods/Services |
|------|---------|----------------|
| | | web application for accessing, viewing, and managing checking accounts (in international class 042). |
| | 90813234 | Credit card payment processing services; Credit card transaction processing services; Credit card transaction processing services provided via a mobile application or website; Debit card transaction processing services; Debit card transaction processing services provided via a mobile application or website; Payment processing services, namely, credit card and debit card transaction processing services (in international class 036). |
| | 90813247 | Magnetically encoded credit cards; Magnetically encoded debit cards (in international class 009). |

37.     In or around June 9, 2021, Members 1st learned of first three additional trademark applications filed by M1 Holdings for the **M** design for various categories of products and services relating to investment services because the applications were published for objections by third parties.  Members 1st immediately filed an extension to object through its counsel and then settlement discussions began between Members 1st and M1 Holdings.  While discussions were ongoing, Members 1st believed that the parties were working in a good faith attempt to resolve the matter in a way that would avoid consumer confusion and, thus, that both parties would continue to maintain the status quo that had existed.

38.     On November 16, 2021, Members 1st filed a proceeding before the U.S. Trademark Trial and Appeal Board to oppose the registration of the above-discussed application (U.S. Trademark App. No. 90/326818), for the **M** mark for use with financial services in international class 036, based upon likelihood of confusion with Members 1st's registered and incontestable M1st Mark (**M**) for credit union services in international class 36.  That proceeding is pending.

17

39.     Then, further contrary to the status quo, in November 2021, M1 Holdings disclosed to Members 1st's counsel that M1 Holdings was actively offering not only a website and mobile application for investment services, but now was offering banking services under the designations

M1,  and (the "Infringing Marks").

40.     Members 1st began further investigation of M1 Holdings' actual marketplace uses of the Infringing Marks and the products and services being offered thereunder, and the extent of the same.

41.     On January 17, 2022, Members 1st became aware that M1 Holdings' used the Infringing Marks in a televised advertisement that was broadcast nationally to millions of viewers on the ESPN television network just prior to a Monday night NFL Wild Card Game, specifically, during the matchup between Arizona Cardinals and the Los Angeles Rams.

42.     From further investigation in the subsequent weeks, Members 1st learned, including from the representations on the M1 Holdings and Lincoln Savings Bank's websites, that M1 Holdings had partnered with Lincoln Savings and that Lincoln Savings was offering banking services, including checking, debit and credit card services, to M1 Holdings' customers, under the Infringing Marks.

43.     In accordance with that partnership, Lincoln Savings currently furnishes checking accounts, credit and debit cards to M1 Holdings' customers under the Infringing Marks.

44.     In the absence of its partnership with a bank, like Lincoln Savings, M1 Holdings could not offer customers traditional banking services, such as checking accounts and debit cards.

131707127

45.     Additionally, on or around February 3, 2022, M1 Holdings expanded the online advertising of its services from the website domain www.m1finance.com to redirect consumers to the website branded solely as "m1" at the domain name www.m1.com.

46.     Learning of the foregoing significant expansions of M1 Holdings' products and services offerings under the Infringing Marks, including through its partnership with Lincoln Savings, Members 1st immediately sent a letter to M1 Holdings, noting it was a final attempt to come to an amicable resolution without a further escalation of this matter for court intervention.

47.     In particular, on February 11, 2022, Members 1st sent cease-and-desist letters to both M1 Holdings and Lincoln Savings demanding that they immediately cease use of the Infringing Marks in connection with services that are similar and/or identical to those of Members 1st.  *See* ECF No. 1-5.

48.     In response, on February 17, 2022, in what appears like merely an attempt to delay further action by Members 1st, M1 Holdings requested clarification regarding Members 1st's demand.  *See* ECF No. 1-6.

49.     On February 21, 2022, Lincoln Savings sent a similar letter requesting clarification of Members 1st's demand.

50.     On March 3, 2022, Members 1st sent clarification to both M1 Holdings and Lincoln Savings, providing specifics of its demands and urgently requesting a phone call with M1 Holdings to discuss the matter.  *See e.g.,* ECF No. 1-7.

51.     Neither Counter-Defendants M1 Holdings or Lincoln Savings provided a substantive response to Members 1st's March 3, 2022 letters.

52.     Instead, less than 24 hours after receiving the requested clarification and request for a discussion, M1 Holdings, in what appears to be an attempt at forum selection for the noticed

and impending infringement claims, immediately commenced this declaratory judgment action against Members 1st.

53.     M1 Holdings' expansions of the nature and manner of uses of the Infringing Marks, and the products and services it offered under them—including as demonstrated by its attempts to register the Infringing Marks—were all done with full, prior knowledge of Members 1st, Members 1st's financial services, and Members 1st's M1st Mark, in particular, its federally registered and incontestable **M**$^{st}$ mark.

54.     Counter-Defendants continue to offer checking accounts, debits cards, and other financial products and services to customers under the Infringing Marks.

55.     The Infringing Marks are highly similar, in fact nearly identical, in appearance to Members 1st's M1st Mark, in particular, its federally registered and incontestable **M**$^{st}$ mark.

56.     Further, the financial products and services M1 Holdings and Lincoln Savings offer under the Infringing Marks are identical, highly similar, and/or related to the products and services Members 1st offers.

57.     Additionally, the parties' respective goods and services target the same categories of individuals—namely, persons seeking investment and banking products and services—and travel in the same and/or related trade channels.

58.     Counter-Defendants' infringing acts have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counter-Defendants' products and services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Counter-Defendants' products and services originate from, are associated or affiliated with, or are otherwise authorized by Counter-Claimant.

20

59.     Counter-Defendants' acts are willful with the intent to trade on the goodwill, distinction and reputation of Counter-Claimant's brand and M1st Mark, cause confusion and deception in the marketplace, and divert potential sales of Counter-Claimant's products and services to the Counter-Defendants.

60.     Counter-Defendants' acts are causing, and unless restrained, will continue to cause damage and irreparable harm to Counter-Claimant and to its valuable hard-earned reputation, distinction and goodwill with the consuming public for which Counter-Claimant has no adequate remedy at law.

61.     As a result of Counter-Defendants' infringing activities and unfair competition, Counter-Claimant has been damaged.

62.     Members 1st will lose sales to the extent that Counter-Defendants has caused or will cause consumers to obtain products and services from Counter-Defendants under the mistaken belief that they are obtaining them from Members 1st, or that there is a relationship between the parties when there is not.

63.     In addition, because it is currently unknown how extensively Counter-Defendants advertise and promote financial services and products under the Infringing Marks, Counter-Defendants are likely to unfairly gain recognition and sales at Members 1st's expense by benefiting from the reputation, goodwill and recognition already established and embodied in Members 1st's distinct M1st Mark.

64.     A further form of injury to Members 1st is the loss of control over its brand's reputation.  Counter-Defendants' unauthorized use of the Infringing Marks that are highly similar in appearance to Members 1st's M1st Mark causes Members 1st to be associated with services and products over which it has no control.

65.     This involuntary association could injure Member 1st if consumers are dissatisfied with Counter-Defendants' products and services for any reason and, consequently, have a less favorable opinion of Members 1st and its products and services.

66.     Counter-Claimant has retained the undersigned counsel and is obligated to pay it a reasonable fee in connection with this action.

**COUNTERCLAIM I**
**FEDERAL TRADEMARK INFRINGEMENT**
**(Against Both Counter-Defendants)**

67.     Counter-Claimant adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-66 in these Counterclaims as if fully set forth in this paragraph.

68.     Counter-Claimant is the sole and exclusive owner of the federally-registered M1st Mark.

69.     The M1st Mark, as used by Counter-Claimant in connection with its products and services, is inherently distinctive and/or has acquired secondary meaning.

70.     Indeed, U.S. Trademark Registration No. 3055347 for the $\mathbf{M}^{st}$ design mark is incontestable and, thus, it is conclusively presumed that such M1st Mark is inherently distinctive and/or has acquired secondary meaning under 15 U.S.C.A. § 1115(b).

71.     Counter-Defendants have used and are continuing to use the Infringing Marks in providing identical or substantially similar products and services to those offered by Counter-Claimant.

72.     Members 1st has not authorized, directly or indirectly, to Counter-Defendants use of the Infringing Marks in any manner.

73.     Counter-Defendants' activities complained of herein have been without Counter-Claimant's consent.

22

131707127

74.     Members 1st does not currently have the ability to control the nature and/or the quality of the goods and services Counter-Defendants offer under the Infringing Marks.

75.     Counter-Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Counter-Defendants' products and services, and is likely to cause consumers to believe, contrary to fact, that Counter-Defendants' products are sold, authorized, endorsed, or sponsored by Counter-Claimant, or that Counter-Defendants are in some way affiliated with or sponsored by Counter-Claimant. Counter-Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

76.     Counter-Defendants have committed the foregoing acts of infringement with full knowledge of Counter-Claimant's prior rights in the M1st Mark and with the willful intent to cause confusion and trade on Counter-Claimant's goodwill and reputation.

77.     Counter-Defendants' conduct is causing immediate and irreparable harm and injury to Counter-Claimant, and to its goodwill and reputation, and will continue to both damage Counter-Claimant and confuse the public unless enjoined by this Court. Counter-Claimant has no adequate remedy at law.

78.     Counter-Claimant is entitled to, among other relief, injunctive relief and an award of actual damages, Counter-Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### COUNTERCLAIM II
### FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (Against Both Counter-Defendants)

79.     Counter-Claimant adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-66 in these Counterclaims as if fully set forth in this paragraph.

131707127

80. Counter-Defendants' unauthorized use in commerce of the Infringing Marks is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Counter-Defendants' products and services, and is likely to cause consumers to believe, contrary to fact, that Counter-Defendants' products are sold, authorized, endorsed, or sponsored by Counter-Claimant, or that Counter-Defendant is in some way affiliated with or sponsored by Counter-Claimant.

81. Counter-Defendants' unauthorized use in commerce of the Infringing Marks constitutes use of a false designation of origin and misleading description and representation of fact.

82. Upon information and belief, Counter-Defendants' conduct is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Counter-Defendant with Counter-Claimant.

83. Counter-Defendants' conduct constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

84. Counter-Defendants' conduct is causing immediate and irreparable harm and injury to Counter-Claimant, and to its goodwill and reputation, and will continue to both damage Counter-Claimant and confuse the public unless enjoined by this court. Counter-Claimant has no adequate remedy at law.

85. Counter-Claimant is entitled to, among other relief, injunctive relief and an award of actual damages, Counter-Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

131707127

**COUNTERCLAIM III**
**COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**
**(Against Both Counter-Defendants)**

86.     Counter-Claimant adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-66 in Counterclaims as if fully set forth in this paragraph.

87.     The aforementioned acts of Counter-Defendants constitute trademark infringement and unfair competition in violation of the common law of the Commonwealth of Pennsylvania.

88.     Such conduct on the part of Counter-Defendants has allowed Counter-Defendants to wrongfully profit and has injured Counter-Claimant in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Counter-Claimant, for which Counter-Claimant has no adequate remedy at law.

89.     Counter-Defendants' actions as set forth above permit recovery of Counter-Defendants' profits, damages, and costs by Counter-Plaintiff, including treble damages and Counter-Claimant's attorney's fees.

90.     Counter-Defendants' conduct was malicious and wanton and Counter-Claimant is entitled to an award of punitive damages under Pennsylvania law.

**COUNTERCLAIM III**
**ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 510/2**
**(Against Both Counter-Defendants)**

91.     Counter-Claimant adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-66 in these Counterclaims as if fully set forth in this paragraph.

92.     Counter-Defendants have been misleading consumers and are causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of their products and services, and is otherwise damaging the public. Counter-Defendants' conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

131707127

93.     Counter-Defendants' conduct has caused and is likely to continue to cause substantial injury to the public and to Counter-Claimant, entitling Counter-Claimant to injunctive relief and to recover damages, its costs and its reasonable attorney's fees.

94.     Counter-Defendants' actions as described above constitute trademark infringement and unfair competition in violation of Members 1st's rights under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

95.     Counter-Defendants' acts of infringement and unfair competition have been willful and deliberate.

96.     Counter-Claimant is entitled to, among other things, injunctive relief and an award of attorneys' fees and costs of the action under 815 ILCS 510/3.

## COUNTERCLAIM IV – CANCELLATION OF
## U.S. TRADEMARK REGISTRATION NO. 6448395, 15 U.S.C. §§ 1052(d), 1064(1), 1119
### (Against Counter-Defendant M1 Holdings Inc.)

97.     Counter-Claimant adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-66 in these Counterclaims as if fully set forth in this paragraph.

98.     Counter-Defendant M1 Holdings applied for and obtained U.S. Trademark Registration No. 6448395 for the mark , which issued on August 10, 2021, for use with the following services in international class 042:

> Providing a website featuring non-downloadable software for brokerage and trading of investments, securities, stocks, bonds, capital investments, commodities, and equities; Providing a website featuring non-downloadable software for providing information in the field of finance, securities trading, investments, and securities brokerages; Providing temporary use of a non-downloadable web application for brokerage and trading of investments, securities, stocks, bonds, capital investments, commodities, and equities; Providing temporary use of a non-downloadable web application for providing information in the field of finance, securities trading, investments, and securities brokerages.

26

131707127

99.    Counter-Claimant owns U.S. Trademark Registration No. 3055347, which issued on January 31, 2006, for the **M**ˢᵗ trademark for use with credit union services.

100.    Counter-Claimant is also the owner of U.S. Trademark Registration No. 6349066, which issued on May 11, 2021, for the **M**ˢᵗ trademark for use with charitable services.

101.    Counter-Claimant's registrations are valid and subsisting, and in full force and effect.

102.    Further, Counter-Claimant's U.S. Trademark Registration No. 3055347 for the **M**ˢᵗ trademark is incontestable.

103.    Counter-Claimant has used its registered and incontestable **M**ˢᵗ mark continuously and exclusively in connection with its products and services.

104.    The **M** mark in Registration No. 6448395 is highly similar and/or nearly identical in appearance, sound, connotation, and commercial impression to Counter-Claimant's registered and incontestable **M**ˢᵗ mark.

105.    Further, the products and services recited in Registration No. 6448395 are highly similar and/or nearly identical to the credit union services recited in Members 1st's registrations.

106.    Additionally, the parties' respective products and services target the same classes of consumers and travel in the same or closely related trade channels.

107.    Counter-Claimant has not consented, directly or indirectly, to M1 Holdings' use in commerce of the **M** mark in connection with the products and services recited in Registration No. 6448395.

27

131707127

108.    M1 Holdings' unauthorized use of the mark in commerce in connection with the services recited in the Registration No. 6448395, is likely to confuse, cause mistake, or to deceive consumers as to the origin, source, sponsorship, or affiliation of M1 Holdings' products and services, and is likely to cause consumers to believe, contrary to fact, that M1 Holdings' services are sold, authorized, endorsed, offered, or sponsored by Members 1st, or that M1 Holdings' products and services are, in some way, affiliated with Counter-Claimant.

109.    Registration No. 6448395 is less than one year old and is vulnerable to cancellation on likelihood of confusion grounds.

110.    Based on the above, the Court should cancel U.S. Trademark Registration No. 6448395 for the mark, pursuant to 15 U.S.C. §§ 1052(d), 1064(1), and 1119, based on a likelihood of confusion with Members 1st's earlier registered and incontestable $M^{st}$ mark.

### COUNTERCLAIM V – CANCELLATION OF
### U.S. TRADEMARK REGISTRATION NO. 6461513, 15 U.S.C. §§ 1064(1), 1119
### (Against Counter-Defendant M1 Holdings Inc.)

111.    Counter-Claimant adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-66 in these Counterclaims as if fully set forth in this paragraph.

112.    Counter-Defendant M1 Holdings applied for and obtained U.S. Trademark Registration No. 6461513 for the mark , which issued to M1 Holdings on August 24, 2021, for use with the following goods in international class 009:

> "Downloadable software in the nature of a mobile application for brokerage and trading of investments, securities, stocks, bonds, capital investments, commodities, and equities; Downloadable software in the nature of a mobile application for providing information in the field of finance, securities trading, investments, and securities brokerage."

131707127

113.    Counter-Claimant owns U.S. Trademark Registration No. 3055347, which issued on January 31, 2006, for the **M**st trademark for use with credit union services.

114.    Counter-Claimant is also the owner of U.S. Trademark Registration No. 6349066, which issued on May 11, 2021, for the **M**st trademark for use with charitable services.

115.    Counter-Claimant's registrations are valid and subsisting, and in full force and effect.

116.    Further, Counter-Claimant's U.S. Trademark Registration No. 3055347 for the **M**st trademark is incontestable.

117.    Since at least as early as March 1, 2003, Counter-Claimant has used its registered and incontestable **M**st mark continuously and exclusively in connection with its products and services.

118.    The **M** mark in Registration No. 6461513 is highly similar and/or nearly identical in appearance, sound, connotation, and commercial impression to Counter-Claimant's registered and incontestable **M**st mark.

119.    Further, the products and services recited in Registration No. 6461513 are highly similar and/or nearly identical to the credit union services recited in Members 1st's registrations.

120.    Additionally, the parties' respective products and services target the same classes of consumers and travel in the same or closely related trade channels.

121.    Counter-Claimant has not consented, directly or indirectly, to M1 Holdings' use in commerce of the **M** mark in connection with the products and services recited in Registration No. 6461513.

122.    M1 Holdings' unauthorized use of the **M** mark in commerce in connection with products recited in the Registration No. 6461513, is likely to confuse, cause mistake, or to deceive consumers as to the origin, source, sponsorship, or affiliation of M1 Holdings' products s, and is likely to cause consumers to believe, contrary to fact, that M1 Holdings' products are sold, authorized, endorsed, offered, or sponsored by Members 1st, or that M1 Holdings' products are, in some way, affiliated with Counter-Claimant.

123.    Registration No. 6461513 is less than one year old and is vulnerable to cancellation on likelihood of confusion grounds.

124.    Based on the above, the Court should cancel U.S. Trademark Registration No. 6461513 for the **M** mark, pursuant to 15 U.S.C. §§ 1052(d), 1064(1), and 1119, based on a likelihood of confusion with Members 1st's earlier registered and incontestable **M**st mark.

**WHEREFORE**, Counter-Claimant Members 1st Federal Credit Union, demands judgment against Counter-Defendants M1 Holdings, Inc. and Lincoln Savings Bank, as follows:

A.      Finding that Counter-Defendants' activities complained of herein are unlawful under Federal, Pennsylvania and Illinois law;

B.      Preliminarily and permanently enjoining Counter-Defendants, their predecessors, successors, assigns, divisions, subsidiaries, and joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, employees,

agents, attorneys, representatives, and those acting in privity or concert with them, or on their

behalf, from using the Infringing Marks (including the designations M1,  and  ), any marks comprised of or including the text "M1" regardless of stylization and design, and any marks confusingly similar to the M1st Mark, in connection with financial products and services;

C.      Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any products or services manufactured, sold, distributed, supplied, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Counter-Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Counter-Claimant or constitute or are connected with Counter-Claimant's products or services;

D.      Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Counter-Defendants to file with the court and serve upon Counter-Claimant counsel within thirty (30) days after service on Counter-Defendants of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Counter-Defendants have complied therewith;

E.      Awarding Counter-Claimant an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a));

F.      Directing that Counter-Defendants account to and pay over to Counter-Claimant all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Counter-Claimant for the damages caused thereby;

31

131707127

G.     Awarding Counter-Claimant punitive and exemplary damages as the Court finds appropriate to deter any future willful infringement;

H.     Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Counter-Claimant its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a));

I.     Awarding Counter-Claimant interest, including prejudgment and post-judgment interest, on the foregoing sums;

J.     Awarding such other and further relief as the Court deems just and proper;

K.     Ordering that U.S. Trademark Registration No. 6448395 is cancelled on grounds of likelihood of confusion;

L.     Ordering that U.S. Trademark Registration No. 6461513 is cancelled on grounds of likelihood of confusion; and

M.     Awarding such other and further relief as the Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Members 1st demands a trial by jury as to all issues so triable pursuant to Federal Rule of Civil Procedure 38.

32

131707127

Dated: March 23, 2022          Respectfully submitted,

**FOX ROTHSCHILD LLP**

/s/ *Adam Wolek*
Adam Wolek
Illinois Bar No. 6301207
Patricia M. Flanagan
(*pro hac vice forthcoming*)
FL Bar No. 58592
777 South Flagler Drive
Suite 1700, West Tower
Telephone: (312) 517-9299
Facsimile: (312) 517-9201
Email: awolek@foxrothschild.com
Email: pflanagan@foxrothschild.com

*Attorney for Defendant/ Counter-Claimant*

131707127

## CERTIFICATE OF SERVICE

I certify that, on March 23, 2022, I filed the foregoing ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS with the Clerk of Court via CM/ECF, which provided notice of same to all parties and/or counsel who have made an appearance in this case.

Dated: March 23, 2022                  /s/ Adam Wolek
                                           Adam Wolek

131707127