UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| M1 HOLDINGS INC., <br><br> Plaintiff, <br><br> v. <br><br> MEMBERS 1ST FEDERAL CREDIT UNION, <br><br> Defendant. | Case No. 22-cv-01162 <br><br> Judge Jeffrey I. Cummings <br><br> Mag. Judge Jeffrey Cole |
| MEMBERS 1ST FEDERAL CREDIT UNION, <br><br> Counter-Claimant, <br><br> v. <br><br> M1 HOLDINGS INC., <br> LINCOLN SAVINGS BANK, and <br> B2 BANK NATIONAL ASSOCIATION, <br><br> Counter-Defendants. | **JURY TRIAL DEMANDED** |

**MEMBERS 1ST'S RESPONSE TO M1 HOLDINGS'
SUPPLEMENT TO MOTION TO COMPEL**

At the outset of fact discovery, the parties agreed that productions of documents would be provided on a rolling basis until completion. The parties' searches for responsive documents and document productions are continuing through the date of this filing and neither party's productions are complete.[1] Members 1st has been consistently forthcoming and transparent to M1 Holdings that it has conducted reasonable searches so far but it needs more time to identify or obtain copies, or in some cases obtain consent to produce from third parties, and then actually produce documents

---

[1] On November 27, 2023, just days ago, without any explanation for its delay, M1 Holdings served, a supplemental production of **1,692 new documents comprised of 5,533 pages**—all of which are responsive to discovery requests that Members 1st served many months ago. Yet, in its Supplement, M1 Holdings protests about Members 1st's production of **78 documents**—nearly all of which (as discussed below) Members 1st had to obtain from third parties or for which Members 1st had to seek the prior written consent of third parties to disclose.

to M1 Holdings. In fact, throughout its response, Members 1st stated it conducted reasonable searches and produced all non-privileged documents that it had been able to locate to date and that it would continue its search for responsive documents.[2] That documents continue to be produced on a rolling basis does not call into question that the searches that have been conducted were reasonable. *LKQ Corp. v. Kia Motors America, Inc.*, 2023 WL 3455315, at *5 (N.D. Ill. May 15, 2023) (that a party "has performed a reasonable search and continues to produce responsive documents is all that is required."). Instead of continuing to try to resolve the matter and providing the courtesy of permitting Members 1st to continue and complete its collection, search, and production of responsive documents, M1 Holdings cut off the conferral and rushed to file its motion to compel.[3]

The dispute before this Court is therefore not one necessitated by M1 Holdings' inability to obtain discovery under Rules 26 and 37 of the Federal Rules of Civil Procedure, but merely of its inability to obtain **_all_** responsive document productions **_by_** a unilaterally set and arbitrary deadline. This does not satisfy the good faith standard under Rule 37 for an order compelling discovery and also falls far short of the standard permitting an award of fees under Rule

---

[2] *See, e.g.*, ECF No. 74 at 3 ("produced all the documents … it has been able to locate to date…."), 4 ("all the documents it has received to date from those efforts"), 5 ("all agreements it has located to date for which it has been able to obtain the third parties' consent. Its efforts to obtain consent from other third parties continues."), 12 ("Members 1st has acted diligently and produced all responsive, non-privileged documents it has been able to locate to date…." and "Members 1st has produced all responsive, non-privileged documents it has been able to locate to date after a reasonable search…."), 13 ("produced all brand guidelines, branding policies, and brand style guidelines it has been able to locate to date after a reasonable search").

[3] M1 Holdings' rushing to the Court was particularly surprising given the prior requests to extend fact discovery and the prior representations that they were working together to resolve any disputes. ECF 47 at 1 and 2 (additional document productions will continue on a rolling basis"); ECF 48 (parties jointly moved for a 2 month extension of discovery in order review supplemental discovery and do any necessary follow-up meet and confers and discovery with respect to those responses); ECF 57 ("The parties remain hopeful they will continue to resolve their discovery disputes without intervention from the Court."); ECF 68 (parties jointly moved for a 90-day extension of discovery in order to continue with discovery on the claims asserted against one another and to permit sufficient time to serve discovery on B2 Bank).

37(a)(5)(A). *See e.g., Jackson v. Macon County Sheriff's Dept.*, 2021 WL 2834371, at *3, 6 (C.D. Ill. Jun. 11, 2021) (denying motion to compel demanding full compliance within short period and cautioning that future motions to compel without fulfilling Rule 37's obligation to meet and confer *in good faith* will result in sanctions against moving party). Indeed, the fact that Members 1st had already agreed to produce the responsive documents at issue makes the substance of Members 1st's motion ***moot*** from the outset or not ripe for this Court's review. *See e.g, Hannah's Boutique v. Sudej*, 2014 WL 1227936, at *1, 8 (N.D. Ill. Mar. 25, 2014) (denied motion to compel as moot in light of the non-moving party's agreement to produce the requested documents within twenty-one days).

Accordingly, there is nothing that necessitates the Court's intervention at this time. The Court should deny the motion to compel as moot or not ripe for review and permit the parties to continue to provide rolling productions until completion. The parties previously also contemplated that an additional extension of fact discovery deadline (currently set for March 4, 2024) would already be necessary due to the addition of the newly added party B2 Bank. Only after completion of the productions, or when the parties have an actual dispute as to the substance of what will be provided in response to a request, should the parties file motions to compel with the Court to be decided on the merits.

**I.      M1 Holdings' Supplement Adds No Facts Relevant To Show That Members 1st Did Not Act Diligently And In Good Faith**

M1 Holdings Supplement purports to identify certain documents produced after the filing of its motion to compel that it claims show Members 1st falsely represented in its response were not in Members 1st's possession. For the convenience of the Court, M1 Holdings' assertions are pasted below and then separately addressed.

M1 Holdings' ***first*** bullet point in the Supplement states as follows with respect to the

3

*Cardworks* litigation documents that were obtained from prior counsel (ECF 101 at 2):

> *While the Response contends that both Members 1st and its "prior counsel, Flaster Greenberg" did not "have a copy of a settlement agreement related to" the Cardworks Trademark Proceeding, a copy of the settlement agreement for that matter was included for the first time in Members 1st's recent document production. (Compare Dkt No. 74 at 6-7 with M1ST025444M1ST025460.) Further, the correspondence produced with the agreement indicates it had previously been emailed by Flaster Greenberg to Members 1st executives. (See M1ST0254444, M1ST025459.)*

As Members 1st noted in its response to the motion to compel, Members 1st did not maintain documents in-house related to the *Cardworks* litigation. Nonetheless, consistent with Members 1st's representations all along, Members 1st contacted prior counsel Flaster Greenberg, who was its counsel in that litigation, to obtain copies of certain responsive documents from that case. At the time it filed its response to the motion to compel, Members 1st had understood that Flaster Greenberg did not still have a copy of the 2011 settlement agreement in its electronic files. Flaster Greenberg subsequently searched hard copy files located in its offsite storage and identified a hardcopy of the settlement agreement. Once identified, Members 1st collected and produced a copy.

The email M1 Holdings references in its assertions that attached the **_2011_** settlement agreement discussed above is also dated **_2011_**. The email, which is more than **_12_** years old, went to an executive that is no longer with Members 1st and has not been for at least 6 years. It is not surprising based upon their age that neither the email nor the settlement agreement was identified in the searches conducted in-house by Members 1st.

M1 Holdings' **_second_** bullet point in the Supplement states as follows with respect to the *206 Design* litigation that were obtained from prior counsel (ECF 101 at 2):

> *While the Response contends that Members 1st had "produced copies of the pleadings and filings in its possession" from the 206 Design Litigation, the new production contains previously unproduced discovery requests, responses, and*

4

> *correspondence from that matter. (Compare Dkt No. 74 at 8 with newly-produced M1ST024650-M1ST024653; M1ST024690-M1ST024736; and M1ST025013-M1ST025214.) We remind the Court that the 206 Design Litigation occurred during the pendency of this case and recently settled. (Dkt No. 71 at 14.)*

As is the case with the *Cardworks* Litigation documents, discussed above, Members 1st did not identify the documents that were recently produced relating to the 206 Design Litigation when it searched for them in-house. Once the documents were identified by prior counsel in that litigation, they were collected and produced by Members 1st.

M1 Holdings' ***third*** bullet in the Supplement states as follows about agreements recently produced and discovery from other litigation (ECF 101 at 2-3):

> *While the Response contends that Members 1st had "already produced all non-privileged, responsive documents that it is [sic] has been able to locate after a reasonable search," the new production includes Members 1st's initial agreements with LPL Financial and Merit Marketing, as well as discovery requests exchanged in the Metro Bank Litigation, all of which were explicitly referenced in the Motion to Compel. (Compare Dkt No. 74 at 11 with M1ST023327-M1ST023368, M1ST025326-M1ST025333, M1ST025390-M1ST025443, and M1ST025509-M1ST025538; Dkt No. 71 at 11, 14.)*

In the above assertions, M1 Holdings cites additional agreements between Members 1st and LPL Financial and Merit Marketing, as well as some written discovery responses exchanged in the Metro Bank Litigation.[4] After a lengthy search and various discussions with multiple department leaders, the LPL Financial agreement—executed over ***6*** years ago—was located and produced. Members 1st obtained the newly produced Merit Marketing agreements and written discovery responses, which were not identified by Members 1st when it searched for them in-house. Such documents were identified by prior counsel, after the filing of Members 1st's response

---

[4] M1 Holdings once again incorrectly claims that Members 1st stated in its response that it had produced all responsive documents. As established above, Members 1st consistently stated in its response that it had produced all responsive documents it had been able to locate to date. *See* §I, *supra*. Further, Members 1st also stated it was waiting for additional documents from third parties and third parties' consent to disclose certain confidential documents. *Id.*

to the motion to compel. Members 1st collected copies and produced them.

Finally, M1 Holdings' also listed certain charter agreement and vendor agreements recently provided by Members 1st on Exhibit B in connection with which it provided the following arguments (ECF 101 at 3):

> *As the chart attached hereto as Exhibit B shows, other recently produced documents similarly fall within the categories of information M1 Holdings addressed in its Motion to Compel. Despite this, Members 1st did not include with its November 17th production any explanation as to why these documents were not timely produced, or how the new production could be reconciled with the representations made to this Court in Members 1st's Response brief. While Members 1st did subsequently contend – during the parties' meet-and-confer for the motion seeking leave to file this Supplement – that at least a portion of these new documents were delayed because Members 1st needed to contact third parties, it again failed to identify all the third parties that were contacted, failed to explain why any purported concerns were not quickly resolved by the confidentiality order in this case, and failed to elaborate on its apparent position that documents in the files of its own prior attorneys are outside of its control.*

M1 Holdings references in Exhibit B certain charter amendments that were included in the most recent rolling production—a charter that was issued over **20** years ago—and vendor agreements that were recently produced.

As stated in its response, Members 1st produced all documents related to the charter amendment request that it had found after a diligent and good faith effort so far. As represented to M1 Holdings, Members 1st continued looking for responsive documents and conducted additional searches. When it identified the additional documents, it timely produced them.

Further, with respect to the vendor agreements, Members 1st cannot simply ignore confidentiality protections in place with respect to documents. As M1 Holdings' Supplement acknowledges, many of the documents that Members 1st recently produced are agreements that Members 1st has with third parties. Those agreements include confidentiality provisions rendering the fact of the agreements and their terms are confidential and unable to be disclosed without the

prior written consent of the third parties. Members 1st has been seeking consent and producing the agreements as that consent is obtained.

Accordingly, contrary to M1 Holdings' assertions, Members 1st was not withholding any of the complained-of documents from its productions. Rather, it is continuing to conduct searches, make and follow up on requests to prior counsel and third parties, and it produced documents when identified and collected on a rolling basis.

Furthermore, M1 Holdings' Supplement is unnecessary, adds no facts relevant to the disposition of the motion to compel, which is moot or simply not ripe for this Court's consideration. All it has done is exacerbated the cost of litigation.

**II.     M1 Holdings' Did Not Complete Its Conferral *In Good Faith* As Required**

Prior to the filing of the motion, Members 1st advised during counsel's telephone conference that it was in the process of obtaining additional documents, including decades old documents, from third parties and that it was encountering some delays in producing agreements with third parties due to confidentiality provisions requiring the third parties' prior written consent for disclosure. Members 1st further advised M1 Holdings that it had been targeting a production date of additional documents within about two weeks—by around October 13, 2023. M1 Holdings did not object or state that it was retracting its agreement to continuing rolling productions during the call. Rather, M1 Holdings waited until after the call and wrote a ***10-page*** letter arbitrarily demanding a full production by October 6, 2023, without any justification for the date selected. Then, mid-day on October 13, 2023, on Members 1st's target date for its next production, M1 Holdings proceeded, without further notice or discussion, to file its motion with the Court. The parties' conferral was ongoing, and the parties could have done better to minimize and crystallize the issues that needed the Court's attention.

Despite Members 1st informing M1 Holdings that it was processing the complained-of

7

documents (or did not have them yet but was working on identifying and collecting them) and anticipated making another production of them within two weeks, M1 Holdings proceeded to file the motion to compel before the end of the timeframe provided. ECF No. 74 at 1.

### III. That Documents Continue To Be Produced On A Rolling Basis Does Not Call Into Question That Members 1st Is Acting Diligently And In Good Faith In Its Searches

As M1 Holdings conceded during the meet-and-confer,[5] the parties agreed on rolling productions and discovery is on-going. Member 1st is not required to produce every single potentially relevant document that may have ever existed. At no point in time has Members 1st represented to M1 Holdings that Members 1st's document production is complete. Members 1st has made reasonable searches, and both parties are continuing to search and make rolling productions. That documents continue to be produced on a rolling basis does not call into question that the searches that have been conducted were reasonable. *LKQ Corp.*, 2023 WL 3455315, at *5 (stating party searched for and produced thousands of pages of documents for request, including other documents corresponding to overbroad request, and planned to produce additional documents in supplemental production) ("Thus, LKQ has performed a *reasonable search* and *continues to produce* responsive documents, which is *all that is required*.") (emphasis added). Members 1st need only produce those documents in its possession, custody, or control that it has been able to locate through a **reasonable** search. *Id.* at *5, n.3 ("The standard for evaluating discovery is reasonableness, not perfection.") (internal quotations omitted).

In sum, Members 1st has acted diligently and reasonably in its searches but M1 Holdings prematurely ended the parties' discussion and attempts to work out the discovery disputes between

---

[5] During the phone call between counsel, M1 Holdings actually told Members 1st that it did ***not*** want to hear about Members 1st's attempts to identify and obtain copies of the documents that were included in the last rolling production. Rather, it simply wanted an answer as to whether Members 1st objected to the Supplement because it was proceeding with the Supplement no matter what Members 1st said on the call.

them, particularly, where Members 1st had already provided its willingness and agreed that it would be producing additional responsive documents. M1 Holdings' cannot establish it has met and conferred sufficiently as required under Rule 37 or N.D. Ill. Local Rule 37.2. Additionally, if anyone should be awarded fees, it should be Members 1st. *See e.g., Jackson,* 2021 WL 2834371, at *3, 6 (cautioning that future motions to compel without fulfilling Rule 37's obligation to meet and confer *in good faith* will result in sanctions).

## IV.   Conclusion

For the foregoing reasons, and the reasons set forth in its Response to M1 Holdings' motion to compel (ECF No. 74), Members 1st respectfully requests that the Court deny M1 Holdings' motion to compel.

Dated: December 5, 2023

**FOX ROTHSCHILD LLP**

*/s/ Patricia M. Flanagan*
Patricia M. Flanagan (*pro hac vice*)
777 South Flagler Drive
Suite 1700, West Tower
West Palm Beach, FL 33401
Telephone: (312) 517-9299
Facsimile: (312) 517-9201
Email: pflanagan@foxrothschild.com

Melissa E. Scott (pro hac vice)
747 Constitution Drive, Suite 100
Exton, PA 19341
Telephone: (610) 458-1413
Facsimile: (610) 458-7337
Email: mscott@foxrothschild.com

*Attorneys for Defendant/Counter-Claimant
Members 1st Federal Credit Union*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that, on December 5, 2023, I served the foregoing Response to M1 Holdings' Supplement to Motion to Compel Members 1st Federal Credit Union to Respond to Discovery Requests on counsel for Plaintiff/Counter-Defendant M1 Holdings Inc. via email addressed as follows:

**Douglas Albritton**
**Peter Hawkins**
**Stacy Baim**
**Actuate Law, LLC**
**641 West Lake, 5th Floor**
**Chicago, IL 60661**
**Email: Doug.albritton@actuatelaw.com**
**Email: peter.hawkins@actuatelaw.com**
**Email: stacy.baim@actuatelaw.com**

*Attorneys for Plaintiff/Counter-Defendant*
*M1 Holdings Inc.*

*/s/ Patricia M. Flanagan*
Patricia M. Flanagan