**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **M-1 HOLDINGS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 22 C 1162** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **MEMBERS 1ST FEDERAL CREDIT** | ) | |
| UNION**,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

I like to take my time
I mean that when I want to do a thing
I like to take my time and do it right

I mean I might just make mistakes
If I should have to hurry up and so
I like to take my time

To tie my shoes
To eat
To get dressed
To go to sleep at night
To sing a song for you and everything
I do

– Fred Rogers, *I Like to Take My Time*, © 1970, Fred M. Rogers

What an idyllic thought – having all the time in the world to complete a task. However,

cases are not litigated in Mr. Rogers' Neighborhood. In this neighborhood, there are deadlines.[1]

Lawyers tend to be aware of them, but often only as a blur in their peripheral vision as they career

---

[1] The word "deadline" originally meant exactly that. It referred to a line drawn at the perimeter of Civil War prison camps. Cross it, and you were shot. https://www.merriam-webster.com/wordplay/ your-deadline-wont-kill-you. And while "deadlines" in discovery are not as significant, they still matter. Ignoring them can have crucial, adverse consequences.

past them. But deadlines are essential. Without them, especially in discovery, cases would, of course, go on endlessly. *See Raymond v. Ameritech Corp*, 442 F.2d 600, 606 (7th Cir. 2006). But, lawyers will always want more. Review of one set of documents makes them crave another set of documents. When they get these, they wonder if there's another group they would find interesting. When they get that set, they think, surely, there must be more; the next set will be *the* one. Maybe this one last piece of paper or the one after this one will do the trick. But, it can't go on that way, *ad infinitum*. That's not the "neighborhood" we live in, and life is, sadly, short and perfection unattainable. And so, for the following reasons, the defendant's Motion to Compel Production of Documents by Counter-Defendants B2 Bank National Association and Lincoln Savings Bank [Dkt. ##146, 147] is denied.

Given what this case is about when it comes down to it, [Dkt. #34, at 2-4, 21-22; #113, at 1], there has been, to put it colloquially, a lot of discovery. An objective observer might even suggest that the amount of discovery has been out of proportion "to the needs of the case, considering the importance of the issues at stake in the action . . . ." Fed.R.Civ.P.26(b)(1). Unfortunately, it all too often is. Discovery began on January 6, 2022, with the court adopting the parties' desired discovery schedule in which the parties said they'd be finished with fact discovery (including depositions) by July 31, 2022. [Dkt. #40]. Both teams of lawyers felt they could wrap this up in about six months. And, again, given what the case is about, that seemed about right. But now, that seems so long ago, and we were all, to put it wistfully, so much younger and naive. The parties couldn't meet that deadline and, on May 25, 2023, they filed their first motion for an extension of discovery to October 3, 2023, which I granted. [Dkt. #49]. That is standard practice. An initial discovery schedule is rarely, if ever, complied with. It is what happens with succeeding

schedules that often cause difficulty.

But, just a couple of months after that, the defendant filed an unopposed motion for another two-month extension of the discovery deadline, that motion was again granted, setting the new deadline as December 3, 2023. [Dkt. # 54]. There was nothing out of the ordinary about that event. And, the excuse seemed eminently reasonable: the defendant wanted to file an Amended Counterclaim, adding two new parties – B2 Bank and its Chairman, Brian Barnes. A motion for leave to do so was filed before Judge Valderrama on August 2, 2023.[2] So, that was extension number two, and, with it, the parties were afforded nearly an entire year to complete their fact discovery regarding the battle over their M1 and M1st logos.

But, perhaps not unexpectedly, the defendant's Motion to Amend its Counterclaim gave rise to another joint motion for an extension of the discovery deadline on October 3, 2023, with the parties pointing out that they would need additional time for discovery on B2 and Mr. Barnes. I thought that was what the previous extension was for, but I nonetheless granted this third extension and set the new fact discovery deadline as March 4, 2024. [Dkt. #69]. Judge Valderrama allowed the defendant to add B2 as a counter-defendant – that much of defendant's motion wasn't even opposed – but not Mr. Barnes on October 30, 2023. [Dkt. #90].[3]

As 2023 came to a close, it seemed the remaining discovery involving the single, new counter-defendant, B2, had not been efficiently managed. Counsel wanted a fourth extension of

---

[2] Remarkably, the parties filed *seven* briefs over that proposed amendment [Dkt. ##52, 56, 58, 59, 60, 64, 65], including *four* briefs about filing more briefs. [Dkt. ##59, 60, 64, 65]. Some might call that "overlitigating."

[3] In between the October 3, 2023 extension motion and Judge Valderrama's October 30, 2023 ruling, the parties embarked on a two-month, five-brief, four-hundred-page discovery squabble [Dkt. ##71, 74, 76-84, 87, 101, 103], which I finally resolved on January 17, 2024. Again, as with the briefing of the motion for leave to file an amended counterclaim, it was a bit too much about not so much.

3

sixty days. [Dkt. #106]. On January 2, 2024, I granted that motion, with the new deadline – the fifth one the parties had chosen. This time, discovery was extended to May 3, 2024. [Dkt. #109].

A few weeks after that, I entered an Order resolving the parties' dispute over some discovery the defendant wanted from the plaintiff and ordered the plaintiff to produce a number of documents by February 28, 2024. [Dkt. #113]. It should come as no surprise that counsel would contend that the nine weeks between that date and the new May 3, 2024 deadline would not be enough time for them to review the new batch of materials. And so, they asked for a fifth extension, with the new close of fact discovery being June 3, 2024. [Dkt. #115]. It was, after all, only thirty days – albeit after a whopping 514 days of discovery – and surely the parties would not have the audacity to ask for more time after that. Or so I thought. After all, a "judge has a right to assume that deadlines will be honored. The flow of cases through a busy district court is aided, not hindered, by adherence to deadlines." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996). *See also Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1154 (7th Cir. 2021)(". . . we take this opportunity to remind litigants that "district courts must manage a burgeoning caseload, and they are under pressure to do so as efficiently and speedily as they can, while still accomplishing just outcomes in every civil action. Part of that job means that they are entitled—indeed they must—enforce deadlines."). And so, on March 1, 2024, I granted the *fifth* extension, and said – or tried to – in no uncertain terms, that "[t]his however, is the final extension of the discovery schedule." [Dkt. #116](Underlining in original). That sentence in the Order was even underlined, thinking that if something is underlined the significance would not be overlooked.

In hindsight, perhaps I should have added, "and this time I mean it" as Judge Seeger lamented he had not done, but should have in *Galindo v. Café 23 Inc.*, 2023 WL 3123742, at *8

(N.D. Ill. 2023). But I did not. And so, not surprisingly, a month later, the defendant moved for a sixth extension of the fact discovery deadline, asking for an additional forty-five days! The excuse this time was that one of the defendant's lawyers had changed law firms and needed to be accommodated as she settled in and had the case file transferred to her new firm. I granted the motion. The new, seventh fact discovery deadline would be July 18, 2024. I again said it would be "the final extension of the discovery schedule." [Dkt. #124]. Broken in spirit, I didn't even bother to underline it this time – let alone dare invoke Judge Seeger's warning.

A week before that seventh deadline, there was a discovery status hearing. Surely, the parties had completed their work after having been given so very much time. Unbelievably, the lawyers told me at that hearing they still had *four* more Rule 30(b)(6) depositions to take. I told them they should schedule them and complete them promptly. [Dkt. #139]. I reasoned that, after all, this was not another full-blown extension of discovery that was being sought; the lawyers were simply being allowed to take four depositions they had failed to manage taking in the previous year and a half. Aside from those four depositions, discovery closed on July 18, 2024.[4] Or so I thought.

Three months later, at a status hearing on expert discovery, the parties complained "that there were apparently still some outstanding issues relating to fact discovery relating to depositions taken, with the Court's permission, after the scheduled closing of fact discovery." [Dkt. #139]. I reminded the parties that fact discovery had been closed for *three months*, and told them they would have to

---

[4] The defendant says that discovery only "technically close[d]" on July 18, 2024 [Dkt. #146, at 11] – as though the tendentious addition of the word "technically" changes things. It does not. Discovery was closed. The parties were left to their own devices to finish up their long-delayed depositions, not embark on a whole new frolic of their own into additional fact discovery which, if history is any guide, would lead to more discovery and so on, as described in the opening paragraph. After all, initial expert discovery disclosures were supposed to have been served on September 16, 2024, and rebuttal disclosures were to have been served. [Dkt. #131].

resolve whatever lingering issues they had on their own. At that point, the parties and their teams of lawyers had had 657 days of discovery in a case that pits an M1 logo against an M1st logo. "Enough is enough." *Williams v. Shinseki,* 2010 WL 1274233, *4 (7th Cir. 2010). *Accord Santosky v. Kramer*, 455 U.S. 745, 783 (1982). *See also Walker v. Sheahan*, 526 F.3d 973, 981 (7th Cir. 2008); *Motorola Solutions, Inc. v. Hytera Communications Corp.,* 330 F.R.D. 502, 508 (N.D.Ill. 2019). Or it certainly should be.[5]

But, unfortunately, for some, enough is never enough. On November 15, 2024, the defendant filed a motion to compel counter-defendants, B2 Bank and Lincoln Savings, to produce complaint logs and to compel Lincoln Savings to produce revenue reports and related correspondence. [Dkt. #142]. As the defendant suggests, it is within a court's discretion to consider and grant discovery motions even though made after the close of discovery.[6] But, it is also equally within a court's vast discretion to deny such a motion as untimely – and that is what the court is going to do. In this case, there have been six extensions of the fact discovery deadline, and expert discovery is well under way. In its reply brief, the defendant goes so far as to assure the court that reopening fact discovery at this point will not derail expert discovery. [Dkt. #152-1, at 9]. But, the history of the oft-extended

---

[5] The defendant's perspective on the lengthy discovery schedule and generous extensions of deadlines in this case is clearly skewed. At one point in its brief, it likens these proceedings to *Blanchard v. EdgeMark Fin*., 192 F.R.D. 233, 236 (N.D. Ill. 2000) [Dkt. #146, at 12], where the court described its discovery schedule as "aggressive." Whatever else may be said of a discovery schedule that allows six extensions of a fact discovery deadline, it cannot fairly be said to be "aggressive."

[6] Since courts have broad discretion in resolving discovery disputes, *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 601 (7th Cir. 2022), there are rarely "right" or "wrong" answers. *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) with *United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996). On a virtually identical set of facts, two decision-makers can arrive at opposite conclusions, both of which can constitute appropriate exercises of discretion and both be affirmed on appeal. *See Mejia v. Cook County, Ill*., 650 F.3d 631, 635 (7th Cir. 2011); *United States v. Banks*, 546 F.3d 507, 508 (7th Cir. 2008). *Cf. United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006)(Posner, J.)("The striking of a balance of uncertainties can rarely be deemed unreasonable...."). Thus, judges have0 a lot of "wiggle room" in ruling on discovery matters.

discovery in this case makes one view such an assurance with a jaundiced eye. Indeed, one is reminded of the famous quip about promises to the ear to be broken to the hope – teasing illusions like munificent bequests in a pauper's will. *Edwards v. California*, 314 U.S. 160, 186 (1941) (Jackson, J., concurring).

It will be recalled that the parties claimed they were merely going to wrap up four depositions after the close of fact discovery on July 18, 2024, with no need for court intervention. Obviously, that's not what happened. So, let's say, to vary the quip, seven times bitten, eighth time shy. Or to put it in more fundamental terms, the current assurance that yet another extension will have no effect on the projected discovery close is not persuasive. It should not be forgotten that in law as in life merely "saying so doesn't make it so" – a principle emphasized in case after case.[7]

In short, it is an appropriate exercise of the court's discretion under circumstances like those presented by this case to deny as untimely a motion to compel filed months after the close of fact discovery. *See e.g., Alicea v. Cnty. of Cook*, 88 F.4th 1209, 1219 (7th Cir. 2023)("Nor is a district

---

[7] *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)("Naked assertions devoid of factual enhancement" "are not entitled to the assumption of truth."). *Accord Guerrero v. BNSF Ry. Co.*, 929 F.3d 926, 929 (7th Cir. 2019)*; United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir. 2010). *See also Stromberg Motor Devices Co. v. Zenith Carburetor Co.*, 254 F. 68, 69 (7th Cir. 1918). *Accord Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018); *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020)("Notably absent from these allegations, however, is any proposed proof that state actors, not municipal actors, were engaged in this *de facto* discrimination."); *Donald J. Trump for President, Inc. v. Secy of Pennsylvania*, 830 F. Appx 377, 381 (3d Cir. 2020)("But calling an election unfair does not make it so. Charges require specific allegations and then proof. We have neither here.").

Even the Solicitor General's unsupported assertions are not enough. *Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018); *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *Sedona Conference, Commentary on Proportionality in Electronic Discovery,* 18 Sedona Conference Journal, 141, 167-68 (2017)(claims of burden and expense must be supported by "hard information" and not by unsupported assertions); *Bowers v. Dart*, 1 F.4th 513, 520 (7th Cir. 2021)("With all of this evidence in mind, we share the district court's conclusion that a rational juror could doubt that Bowers was telling the truth by insisting he could not walk.").

court obligated to permit additional discovery after the close-of-discovery deadline has passed, a deadline [the] Judge ... extended multiple times in this case."); *Justise v. Zenith Logistics, Inc*., 186 F. App'x 680, 683 (7th Cir. 2006)("... we cannot conclude that it was an abuse of discretion to deny [plaintiff's] motion to compel given its dilatory filing."); *Haynes v. Alliant Food Serv., Inc*., 93 F. App'x 71, 7374 (7th Cir. 2004)("... rarely will we find an abuse of discretion [denying a motion to compel] when the motion to compel came after the close of discovery"); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001)("In light of ... lack of diligence in pursuing the perceived inadequacies in discovery, the district court did not abuse its discretion in denying [plaintiff's] motion to compel as untimely."); *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 542 (7th Cir. 2000)("The plaintiffs complain ... about the district court's denial of their discovery motion. The ... complaint has no possible merit. The motion was filed two months after the date set by the court for the completion of discovery.").

And if that were not enough to deny the defendant's motion, it turns out that the defendant filed its motion even later than it seemed. The defendant served the document requests they say are at issue in May and November of 2023. [Dkt. #146, at 5, 7, 9]. The two counter-defendants both replied in timely fashion in June and December and indicated that they would be limiting production to documents pertaining to the accused marks and that they were unaware of any documents that were responsive within those parameters. [Dkt. #146, at 5,7, 9]. But, in its motion to compel, the defendant tries to make it sound as though this dispute over the breadth of its document requests did not arise until the August 14th and August 16th depositions. [Dkt. #146, at 2]. It was only then, according to the defendant, that the defendant became aware that the counter-defendants had limited their production to documents pertaining to the accused marks. But, that seems unlikely. Given the

responses the counter-defendants provided way back in June and November of 2023 [Dkt. #146-6, Page 6, 26, 22-23 of 29; #146-9, Page 31 of 34], the defendant seems to have been aware of the counter-defendants understandable limitations of production to documents pertaining to the trademarks for a year and a half before it filed its motion to compel, and for a year before discovery closed for the final time after six extensions on July 18, 2024.[8] It had ample opportunity to broach the topic with the court well before fact discovery closed.[9] It did not do so. Now it's far too late.

## CONCLUSION

The defendant's motion [Dkt. ##146, 147] is denied. Discovery, like life itself, is never perfect. *American Hardware Manufacturers Ass'n v. Reed Elsevier, Inc*., No. 03 C 9421, 2008 WL 4090999, at *3 (N.D. Ill. Aug. 20, 2008). Lawyers do not get everything they want – nor should they. Even in litigation, entitlement to information has its limits. As Judge Moran wisely put it: "The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. Parties are entitled to a reasonable opportunity to investigate the facts—and no more." *Vakharia v. Swedish Covenant Hosp*., No. 90 C 6548, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994). This is the "neighborhood" in which lawyers and judges live.[10]

---

[8] Indeed, given the fact that defense counsel specifically raised the topic of customer complaints at the August depositions [Dkt. # 146-7, at Page 3 of 5; #146-10, at Page 3 of 4], there was clearly an inkling among the defendant's legal team that the documents they are now complaining about at issue existed well before the August depositions.

[9] In its reply brief, the defendant changes its tune a bit, claiming that it did not know that there were, specifically, complaint logs responsive to its requests. But, so far s the court knows based on the parties' representations in their submissions, customer complaints did not pertain to the trademarks at issue. So, the counter-defendants' representations that there were no documents pertaining to the trademarks was not, as the defendant alleges in its reply brief, a "false response." [Dkt. #152-1, at 5-6].

[10] Speaking of the "neighborhood" we live in, parties repeatedly asking for extensions of deadlines often say – as has the defendant in this case – that because a trial date has not yet been set, there is no "prejudice" that can result from yet another extension of discovery deadlines or from reopening discovery
(continued...)

Under the schedule that governs this case, the expert discovery "deadlines" have not only been extended as many times as have the fact discovery deadlines, but in addition twice more since fact discovery closed. That is enough. "All good things, including discovery, must come to an end." *U.S. ex rel Taylor v. Hicks*, 513 F.3d 228, 238 (5th Cir. 2008). *See also Sapia v. Board of Ed.*, 351 F.Supp.3d 1125, 1133 (N.D.Ill. 2019). The title of an Article written more than two decades ago by Judge Gettleman aptly applies to the discovery in this case: "We Can Do Better." *See* 25 LITIGATION 3 (Summer 1999).

8    The defendant's Motion to Compel Production of Documents by Counter-Defendants B2 Bank National Association and Lincoln Savings Bank [Dkt. ##146, 147] is denied.

ENTERED: _____
                    UNITED STATES MAGISTRATE JUDGE

**DATE:** 12/9/24

---

[10](...continued)
that has long been closed. [Dkt. #123, #152-1, at 9]. But that is a myopic view of the this case – which is not the only one on the court's docket and far from the court's only discovery matter. When parties drag out discovery in one case, missing deadline after deadline, and ask for discovery to be reopened long after it's closed, it takes the court's time away from the other cases in the queue. That's prejudice. *See, e.g., Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir. 1991)("Litigation is costly not only for the litigants but also for parties in other cases waiting in the queue for judicial attention."); *Khan v. Cnty. of Cook*, No. 22 C 4406, 2024 WL 756944, at *1 (N.D. Ill. Feb. 23, 2024)("Fact discovery in this case should be over; so those motions will unnecessarily take time away from other litigants who are complying with deadlines in their cases. An extension may not prejudice the parties in this particular case, but it will prejudice parties in other cases."); *United States ex rel. Gill v. CVS Health Corp.*, No. 18 C 6494, 2024 WL 406510, at *1 (N.D. Ill. Feb. 2, 2024) Discovery has to close sometime, because more cases with more discovery are pending or are on the way. When parties drag their discovery squabbles past the discovery deadlines – deadlines that they select – they take the court's time away from the other cases in the queue, . . . including cases in which the parties and counsel *comply* with deadlines. At some point, it becomes unfair to the other litigants.").