**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **M-1 HOLDINGS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 22 C 1162** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **MEMBERS 1ST FEDERAL CREDIT UNION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

M1 Holdings, B2 Bank, and Lincoln Savings have filed a Motion to Strike the Expert Report from Bryce Cook that Members 1st served on them recently. [Dkt. #172, 173].

This trademark case is about an "M" and a "1" and an "M" and a "1st". It has now entered its fourth year. Discovery *finally* closed on February 14, 2025 – Valentine's Day – after a staggering and not terribly romantic 771 days and so many missed deadlines that one prefers not to tally them. Given what this case is about, that hardly seems "proportional to the needs of the case, considering the importance of the issues at stake in the action . . . ." Fed.R.Civ.P. 26(b)(1). But, the parties clearly are in love with discovery and have petitioned the court for more over and over again. More recently, however, the "disproportionality train" has been driven by Members 1st, which is currently litigating and re-litigating my decision to keep fact discovery closed (after multiple extensions) before Judge Cummings. [Dkt. ## 158, 160, 162, 177, 178]. Despite having had its objections rejected by Judge Cummings [Dkt. #169], it has not taken "no" for an answer and has moved for Reconsideration of *that* decision, essentially basing the motion on an observation I made in a footnote at the end of my December 6, 2024 Opinion. [Dkt. #177, at 4-6, 8-9]. Members 1st claims

that, in that footnote, I said that "*the court knows* based on the parties' representation in their submissions, customer complaints did not pertain to the trademarks at issue." [Dkt. #177, at 4, quoting Dkt. #156 at 9, n.9](emphasis supplied). That is a slight but significant and purposeful misquotation of the footnote; the footnote actually said, "But, *so far [a]s the court* knows based on the parties' representations in their submissions, customer complaints did not pertain to the trademarks at issue." [Dkt. #156, at 9 n.9](emphasis supplied). In other words, the matter had not been established one way or the other in the parties' briefs. But, those semantics are beside the point because, contrary to Members 1st's reading of the December 6, 2024 Opinion, the footnote was obviously not "the foundation for the Magistrate Judge's reason to find Members 1st's motion to compel was untimely, . . . ." [Dkt. #177, at 9]. The eight pages of discussion preceding that footnote and the phrase, "[a]nd if that were not enough to deny the defendant's motion," ought to make that clear. It certainly seemed clear to Judge Cummings, who even noted it only after listing the other reasons for my having denied Members 1st's motion, after an "if", a "however', an "also", a "moreover," and a "furthermore." [Dkt. #170, at 3].

All that is merely prologue to another discovery motion occasioned by yet another extension of discovery, this time an extension of expert discovery. On January 24, 2025, I granted Members 1st's motion for a *ninth* extension of the expert discovery deadline. (Imagine that; I can't believe it myself)! While I claimed earlier that Members 1st had been driving the disproportionality train of late, there I was on January 24th, shoveling coal into the engine – so to speak. In any event, expert discovery was set to close on that very day, so the motion for an extension came at the last minute. Such motions – like flowers from the gas station on the way home – are often not as well-received as hoped for, especially when they come in a case where deadlines had been repeatedly missed. *See,*

*e.g., Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 947 (7th Cir. 2020); *Ammons-Lewis v. Metro. Water Reclamation Dist. of Greater Chicago*, 543 F. App'x 591, 594 (7th Cir. 2013). But, Members 1st indicated that it was only seeking an extension "out of an abundance of caution" because it wanted to use the extra time to supplement its expert report. Under Fed.R.Civ.P. 26(a)(3) and (e)(2), Members 1st had until thirty days before trial to supplement its report, so yet another extension was not strictly necessary. M1 Holdings Inc., B2 Bank National Association, and Lincoln Savings Bank all objected to Members 1st's motion. But rather than enter yet another briefing schedule on yet another discovery motion and litigate a 21-day extension of a deadline – an exercise which, of course, would serve to extend the end of expert discovery anyway – I simply granted the motion.

Members 1st also indicated its intent that the supplemental report would be a bit of a hybrid affair, indicating that it would also be a sur-rebuttal of the counter-defendants' rebuttal expert report. [Dkt. #166, Pars. 3, 9]. For that, Members 1st did need yet another extension because that report was served on December 11th, meaning a rebuttal or sur-rebuttal would have been due January 11th, Fed. R. Civ. P. 26(a)(2)(D)(ii), and Members 1st would not serve the new report until February 7, 2025, well after that date *and* the expert discovery deadline. As it happened, the report did turn out to be a hybrid affair, which is clear enough from the opening of the report:

> In this supplemental report, I *respond* to the December 11, 2024 rebuttal report and opinions of Brian Daniel, Counter-Defendants' damages expert, and the new data and information presented in that report." [Dkt. #174, at Par. 1 (emphasis added)].

Let's face it. That is clearly not a typical Supplemental Report, and it is understandable that the counter-defendants have moved to strike it. While some courts have allowed hybrid supplemental-rebuttal reports, the Seventh Circuit has recently explained that there is a difference between supplement and rebuttal reports:

Rule 26(e) imposes a duty on parties to supplement discovery responses. The rule is "intended to ensure prompt disclosure of new information, not to allow parties to spring late surprises on their opponents under the guise of a 'supplement' to earlier disclosures." *Barlow v. General Motors Corp.*, 595 F. Supp. 2d 929, 935–36 (S.D. Ind. 2009), citing among other cases *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998) (affirming exclusion of late report presented as supplement: "The purpose of supplementary disclosures is just that—to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline."), and *Solaia Technology LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 806 (N.D. Ill. 2005), citing in turn *Coles v. Perry*, 217 F.R.D. 1, 3 (D.D.C. 2003) (striking late-filed report styled as a "supplemental opinion"); accord, *Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003) (striking "supplemental" report with opinions broader, deeper, and different than those provided in original timely report). "In other words, the duty to supplement cannot be transformed into a right to ambush just before trial." *Barlow*, 595 F. Supp. 2d at 936 (emphasis in original). Tolerating such tactics would serve only to add to the length, complexity, and expense of litigation.

*Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 602–03 (7th Cir. 2024).

Unfortunately, having been informed in Members 1st's motion for a ninth extension of the expert discovery schedule of the probable dual nature of their expert report – sur-rebuttal *and* supplemental – I feel constrained to allow that report to stand. In hindsight, which, unfortunately is always more discerning than foresight, granting the motion for a ninth extension was improvident – to say the least! But, unfortunately, we are where we are. As for the question of prejudice to the counter-defendants, I will, of course, allow the counter-defendants to depose Members 1st's expert and serve a report from their expert in response to Members 1st's most recent report as has been requested. It comes as no surprise that in its response brief, Members 1st says it does not object to this additional extension of expert discovery. [Dkt. #182, 184,185, at 13 n.20].[1] It will, sadly, "add to the length, complexity, and expense of [this] litigation, . . . ." *Chicago Joe's Tea Room*, 94 F.4th

---

[1] *See* post script *infra.*

at 603. Accordingly, the counter-defendants' Motion [Dkt. #172] is, regrettably, denied.

A status hearing is currently set for March 25, 2025 at 11:00 a.m., at which time the schedule for the deposition and filing of counter-defendants' report will be set. Once those activities are concluded, though, that will really be it! There will be no eleventh or twelfth extensions, and no sur-sur-sur-rebuttal reports. As Judge Seeger has recently said in another case: "*and this time I mean it.*'" *Galindo v. Café 23 Inc.*, 2023 WL 3123742, at *8 (N.D. Ill. 2023)(emphasis supplied). Surely, at that point, the lawyers in this case ought to be able to litigate the differences between an "M" and a "1" and an "M" and a "1st", and whatever damages may or may not have resulted from the use of those two marks, which even Members 1st has stated in the past are weak, especially when used in the financial industry. [*See* Dkt. #28-9, Pages 6, 24 of 138 (". . . the terms "members," "first," and "1st" are common and relatively weak when used in the financial services industry.")].

The marks the parties have been litigating over the last three years may well be "weak," but endless discovery and the concomitant expenditure of judicial resources has been robust; perhaps, disproportionately so. After this final expert report and related deposition, it will be time to move on – and, if necessary, to try the case. As much as the end of discovery may break some lawyers' hearts, it "must have an end point, . . . ." *Stevo v. Frasor*, 662 F.3d 880, 886 (7th Cir. 2011).

M1 Holdings, B2 Bank, and Lincoln Savings' Motion to Strike the Expert Report From Bryce Cook [Dkt. #172, 173] is denied.

## POST SCRIPT

It did not go unnoticed that Members 1st's response brief [Dkt. ##182, 184, 185] violated Local Rule 7.1's fifteen pages limitation. While it appears at first glance to be just fifteen pages long, it comes with *twenty-four*, 10.5 font footnotes – smaller than the 11-points required by the Local

Rule – comprising an additional 118 lines of text. That would probably add about five pages of 12-point font text to the fifteen-page document – which would be a clear violation of the page limit of the applicable rules. Dropping so large and so significant a portion of a brief into footnotes was certainly purposeful and certainly does not make it any easier to read and follow. Thus, the real purpose of all those tiny, single-spaced footnotes obviously was to get around Local Rule 7.1. That gambit has been repeatedly denounced by court after court. *See, e.g., Prod. & Maint. Employees' Loc. 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1407 (7th Cir. 1992)("We have repeatedly warned litigants and attorneys not to use textual footnotes to evade page limits."); *Fleming v. Cnty. of Kane, State of Ill.*, 855 F.2d 496, 498 (7th Cir. 1988)("... litigants should not attempt to hide excess text in either an appendix or in footnotes."); *Laborers' Int'l Union of N. Am. Loc. Union No. 783 v. Holland & Hart, LLP*, 715 F. App'x 739 (9th Cir. 2018)(court did not abuse its discretion in sanctioning party for using footnotes to avoid page limits); *O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 931 n.1 (N.D. Ill. 2021)("If Defendant had not moved much of its text into footnotes, however, it would have exceeded the page limits by a significant amount."); *Flores v. United Airlines*, 426 F. Supp. 3d 520, 527 n.2 (N.D. Ill. 2019)("... plaintiff put most of her citations to case authority in footnotes, making reading her brief unnecessarily difficult and violating the spirit of the page limit. The parties are warned that, in the future, the Court will ignore any citations that the parties put in footnotes."); *In re Rough Rice Commodity Litig.*, No. 11 C 618, 2012 WL 473091, at *1 n.1 (N.D. Ill. Feb. 9, 2012)("In their response brief, Plaintiffs have included extensive single-spaced footnotes that include arguments and a multitude of citations.... Plaintiffs' use of footnotes is a blatant attempt to exceed the fifteen-page limit set by Local Rule 7.1 without prior approval of this Court."); *Merix Pharm. Corp. v. EMS Acquisition Corp.*, No. 09C5871, 2010 WL 481247, at *1 n.1 (N.D. Ill. Feb. 4,

2010)("Merix makes excessive use of single spaced block quotations and footnotes in its brief; on any reasonable page layout, Merix's brief would exceed the fifteen-page limit specified in Local Rule 7.1.").

By rights, and to be fair to the counter-defendants, I could have stricken the brief when it was filed. But, discovery in this case has descended too far into the picayune, and with the actual end of discovery so enticingly in sight, I shall instead assume that Members 1st's counsel is a fan of the works of David Foster Wallace and has made an attempt to emulate his style. In the future, they shouldn't.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 3/18/25